Freddie R. GOMILLION, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 81–86.

District of Columbia Court of Appeals.

Argued Jan. 19, 1982.

Decided June 22, 1982.

---

**450** 

G. William Scott, Washington, D. C., for petitioner.

Michael A. Milwee, Washington, D. C., for respondent.

Before FERREN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

On this petition for review, the sole issue is whether the final decision of the Acting Director, Department of Employment Services (D.O.E.S.), disqualifying petitioner for unemployment compensation benefits,[1] is supported by substantial evidence in the record and is in accordance with law.[2]

Finding no error requiring reversal, we affirm.

The operative facts are not in dispute. For some time prior to July 7, 1980, petitioner was employed by the BEMA Equipment Company as a concrete finisher. On that date petitioner, having given one week's notice, quit his job for the announced purpose of taking a similar job with Macben Company, Inc. at a higher hourly wage.[3] Unfortunately, when petitioner reported for work at Macben, he was informed that the job he expected and had allegedly been promised was not available.

Petitioner then applied for unemployment compensation benefits, urging his entitlement based upon the facts and circumstances outlined above. In accordance with prescribed procedures, first a Claims Deputy, next an Appeals Examiner, and finally the Acting Director, D.O.E.S., determined (1) that petitioner voluntarily left his employment with BEMA, (2) that such leaving was without good cause connected with the work at BEMA, and (3) that petitioner was for these reasons disqualified for unemployment benefits for a period of seven weeks. This petition for review followed.

D.C.Code 1980 Supp., § 46–310(a), recodified as D.C.Code 1981, § 46–111(a) provides in pertinent part:

An individual who left his most recent work voluntarily without good cause connected with the work, as determined by the Board under regulations prescribed by it, shall not be eligible for benefits with respect to the week for which he first files for benefits and with respect to not less than 6 nor more than 12 consecutive weeks of unemployment which immediately follow such week. . . .

In the process of our review of the final decision of the Acting Director, we are required to construe the statute involved according to the plain and ordinary meaning

---

1. D.C.Code 1980 Supp., § 46–310(a), recodified as D.C.Code 1981, § 46–111(a).

2. D.C.Code 1980 Supp., § 1–1510(a), recodified as D.C.Code 1981, § 1–1510(a)(3)(E).

3. Petitioner had previously worked for Macben as a concrete finisher and before giving BEMA notice of his intention to quit, he had been informed by the foreman of Macben that a job was available to him at $8.38 an hour, an increase of $1.38 an hour over what he was paid at BEMA, and that Macben wanted him back.

of the words employed by the drafters. *Temporaries Inc. v. District Unemployment Compensation Board*, D.C.App., 304 A.2d 14, 17 (1973). In this connection, the scope of our review is limited by D.C.Code 1973, § 1–1510(3)(E), recodified as D.C.Code 1981, § 1–1510(a)(3)(E), to a determination whether the findings of fact, upon which the compensation authorities based their decision are supported by substantial evidence in the record and whether the ultimate decision is in accordance with law. *Washington Post Co. v. District Unemployment Compensation Board*, D.C.App., 379 A.2d 694, 696 (1977).

Since there is no dispute in the facts as found by the Appeals Examiner and sustained by the Acting Director, it remains only to determine whether the decision to disqualify petitioner for the period ordered was in accordance with law. This court must, of course, give great weight to any reasonable construction of a regulatory statute adopted by the administrative agency charged with its enforcement. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *SEC v. Chenery Corp.*, 332 U.S. 194, 209, 67 S.Ct. 1575, 1583, 91 L.Ed. 1995 (1947); *Hockaday v. D.C. Department of Employment Services*, D.C.App., 443 A.2d 8, 12 (1982); *Coakley v. Police and Firemen's Retirement and Relief Board*, D.C.App., 370 A.2d 1345, 1348 (1977); *Watergate Improvement Associates v. PSC*, D.C.App., 326 A.2d 778, 785 (1974). Consequently, we must defer to the Department of Employment Services' interpretation of the voluntary quit provisions of the unemployment compensation statute "unless it is 'unreasonable either in light of the record or prevailing law.'" *Hockaday v. D.C. Department of Employment Services, supra*, at 12, quoting *Thomas v. District of Columbia Department of Labor*, D.C.App., 409 A.2d 164, 169 (1979). *See also*

*Wolf v. D.C. Rental Accommodations Commission*, D.C.App., 414 A.2d 878, 880 (1980); *Tenants of 3039 Q Street, N.W. v. D.C. Rental Accommodations Commission*, D.C. App., 391 A.2d 785, 787 (1978); *Coakley v. Police and Firemen's Retirement and Relief Board, supra* at 1349.

The decision of the Acting Director was that petitioner voluntarily left his job as a concrete finisher at BEMA without good cause connected with such work.[4] Absent, therefore, any showing in the record of a complaint respecting petitioner's working conditions at BEMA, we cannot say, in view of D.C.Code 1980 Supp., § 46–310(a), recodified as D.C.Code 1981, § 46–111(a), that the decision was not in accordance with law. *See also* D.C.Code 1973, § 1–1510(3)(E), recodified as D.C.Code 1981, § 1–1510(a) (3)(E).

We hold therefore that the Acting Director did not err in concluding that the "good cause connected with the work" requirement was not satisfied by the considerations that motivated petitioner to leave his employment at BEMA, *viz.*, the expectation of earning higher wages at Macben.[5]

*Affirmed.*

FERREN, Associate Judge, concurring:

Although I concur in the result, I cannot join in the opinion of the court. In ignoring the sequence of statutory and regulatory amendments, the court does not make clear that the result here is limited to cases arising during the period between March 3, 1979 and November 20, 1981.

I.

Until March 3, 1979, D.C.Code 1973, § 46–310(a) provided in part:

An individual who has left his most recent work without good cause, as deter-

---

4. The statute explicitly requires that "good cause" be connected with the employee's most recent work.

5. It is regrettable that petitioner, in an effort to improve his employment pay status, found himself both without a job and without unemployment compensation. But we are con-

strained to sustain the determination that petitioner voluntarily left his former employment without good cause connected with the work. *Washington Post Co. v. District Unemployment Compensation Board, supra. See also Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973).

mined by the Board under regulations prescribed by the District of Columbia Council, shall not be eligible for benefits . . . .

The applicable regulations, 18 D.C.R.R. § 301.1, provided in part:

(a) . . . where it appears that the leaving was voluntary, the burden of proof shall be on the claimant to establish good cause. What is good cause for leaving will accordingly depend on the facts in each case *and will not be confined to causes connected solely with the employment itself.* The test will be—what would the reasonable and prudent individual in the labor market do in like circumstances. [Emphasis added.]

(b) For example, the following in general, would not be considered good cause for leaving:

\* \* \* \* \* \*

(6) Vague prospects of other work deemed by the claimant more desirable.

\* \* \* \* \* \*

If the foregoing statute and regulations were applicable here, the conclusion would be irresistible that a voluntary departure from one's job to accept a firm offer of manifestly better employment—in contrast with a "vague prospect[ ] of other work," *id.* —would be "good cause" for leaving. A "reasonable and prudent individual in the labor market," *id.*, would likely make that choice. Thus, the employee would not be disqualified from unemployment benefits if, as in the present case, the firm offer fell through.

On March 3, 1979, the statute, D.C.Code 1980 Supp., § 46–310(a) was amended in relevant part to read as follows:

An individual who left his most recent work without good cause *connected with the work*, as determined by the *Board* under regulations presented by it, shall not be eligible for benefits . . . . [Emphasis added.]

Thus, there were two basic changes: First, good cause for voluntarily leaving a job must be "connected with the work," in con-

trast with the former regulation that "good cause . . . will not be confined to causes connected solely with the employment itself." 18 D.C.R.R. § 301.1(a). Second, the Board, not the Council, was given authority to promulgate the regulations.

## II.

On July 7, 1980, over a year after the statute was amended but before the Board issued new regulations,[1] petitioner left BEMA Equipment Company to accept what he perceived to be a firm offer of a substantially higher paying job with his former employer, Macben Company, Inc. *Ante* at 450 & n.3.

Based solely on the new statutory language—that "good cause" must be "connected with the work"—the Claims Deputy, Appeals Examiner, and Acting Director of DOES finally determined as of January 16, 1981, "(1) that petitioner voluntarily left his employment with BEMA, (2) that such leaving was without good cause connected with the work at BEMA, and (3) that petitioner was for these reasons disqualified for unemployment benefits." *Ante* at 2. I agree with my colleagues that—without benefit of interpretative regulations by the Board—we must defer to DOES' ad hoc interpretation of amended § 46–310(a), namely that "good cause connected with the work" means, in effect, there must be something *wrong* with one's present job that triggers the voluntary leaving. After the statutory amendment, that interpretation is not " 'unreasonable either in light of the record or prevailing law.' " *Hockaday v. D.C. Department of Employment Services*, D.C.App., 443 A.2d 8, 12 (1982) (citation omitted).

## III.

The present decision, however, is applicable only to cases that have arisen during a limited time period, from March 3, 1979 to November 20, 1981, when the Board's new regulations under the amended statute became effective. *See* 28 DCR § 4612 at

**1.** *See Hockaday v. D.C. Dept. of Employment*   *Services*, D.C.App., 443 A.2d 8, 11–12 (1982).

4965, 4976 (Nov. 20, 1981). Two points, therefore, should not be lost. First, DOES' present interpretation—without reference to regulations—is only one of at least two reasonable interpretations of "good cause connected with the work" under § 46–310(a), as amended:

(1) There must be something "bad" about the present job that, in effect, drives the claimant away. A better job elsewhere does not make it "bad." Thus, even with a firm offer of better employment elsewhere, there is no good cause connected with (read "attributable to") the work; or

(2) There must be a reason for leaving directly connected with the most recent work, as a reference point. The words "connected with," however, are content-neutral; they mean that the good cause must be related to, but not necessarily attributable to, the work. Thus, "good cause" can be an employment-connected reason found outside the present job, such as a firm offer of higher-paying work elsewhere which provides a better opportunity.[2]

This latter interpretation is consistent with legislative history showing that the Council adopted the version of the statutory section proposed by the Mayor, who wrote:

The proposed changes to the disqualification provisions also aim at bolstering the trust fund, in addition to facilitating administration of these provisions and eliminating certain inequities. By limiting good cause for voluntarily leaving work to *job-related factors*, and by providing that disqualifications on separation begin with the week the claim is opened and not with the week of the actual separation, the bill represents a judicious effort to reduce access to benefits by persons whose unemployment is of their own making. (Emphasis added.) [Letter of

Walter E. Washington, Mayor, to Sterling Tucker, Chairman of the Council of the District of Columbia at 2–3 (September 9, 1977).]

The legislature intended to limit "good cause for voluntarily leaving work to job-related factors," *id.*, in contrast with the regulations under the previous statute wherein "good cause for leaving . . . will not be confined to causes connected solely with the employment itself." 18 D.C.R.R. § 301.1(a). The reference to "job-related factors," however, is not necessarily so narrow that it must mean the present job, for some reason, has turned sour.

My second point addresses the relevance of the two possible interpretations. Effective November 20, 1981 [3]—ten months after the DOES disposition here—the Board adopted regulations, 28 DCR § 4612 at 4965, 4976, under the amended statute:

4612 VOLUNTARY LEAVING

4612.1 Pursuant to section 10(a) of the Act, the Director shall disqualify for benefits any individual who left his most recent work voluntarily without good cause connected with the work.

\*     \*     \*     \*     \*     \*

4612.5 The circumstances which constitute good cause connected with the work shall be determined by the Director based upon the facts of each case. The test shall be, "what would a reasonable and prudent person in the labor market do in the same circumstances?"

There follow sections 4612.6 and 4612.7 (set forth in the margin) containing examples, respectively, of what does not, and what does, constitute "good cause connected with the work." [4] It would appear from the test

---

**2.** My colleagues' statement that "[t]he statute explicitly requires that 'good cause' be connected with the employee's most recent work," *ante* at 451 n.4, therefore begs the question.

**3.** The regulations were proposed on July 17, 1981 and approved by the Board on October 22, 1981.

**4.** 28 DCR § 4612.6 at 4976 provides:

The following shall *not* constitute good cause connected with the work for voluntary leaving:
(a) Refusal to obey reasonable employer rules;
(b) Minor reduction in wages;
(c) Transfer from one type of work to another which is reasonable and necessary;
(d) Marriage or divorce resulting in a change of residence;

and examples in §§ 4612.5–.7, that the second interpretation of § 46–310(a), as amended, remains a live option for the period beginning November 20, 1981, under the new Board regulations; for a "reasonable and prudent person in the labor market," 28 DCR § 4612.5 at 4976, might do what petitioner did here: give notice to his or her first employer after receiving a firm offer of a better paying job elsewhere.

I go into all this to make clear that this court, in deferring here to DOES' interpretation of the amended statute (during the hiatus between regulations), should not be read to have announced a definitive interpretation for all time. The question under the statute, as interpreted in light of the new regulations, is open.

(e) General dissatisfaction with work;
(f) Resignation in order to attend school or training;
(g) Personal or domestic responsibilities.
28 DCR § 4612.7 provides:
Reasons considered good cause connected with the work for voluntary leaving include, but are not limited to, the following:
(a) Racial discrimination or harassment;
(b) Sexual discrimination or harassment;
(c) Failure to provide remuneration for employee services;
(d) Working in unsafe locations or under unsafe conditions;

(e) Illness or disability caused or aggravated by the work; Provided, that the claimant has previously supplied the employer with a medical statement;
(f) Transportation problems arising from the relocation of the employer, a change in the primary work site, or transfer of the employee to a different work site; Provided, that adequate, economical, and reasonably distanced transportation facilities are not available.