**Sheldon H. GOPSTEIN, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 83–798.**

District of Columbia Court of Appeals.

Argued July 10, 1984.

Decided Aug. 24, 1984.

---

Sheldon H. Gopstein, petitioner pro se.

Michael A. Milwee, Washington, D.C., for respondent.

Before MACK, FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Petitioner seeks review of a decision by the Department of Employment Services ruling him ineligible for unemployment benefits. We affirm the Department's decision.

I

When petitioner graduated from George Washington University Law School in May 1982, he left his position as a law clerk with the Washington firm of Ashcraft & Gerel and moved to New York. There he filed an interstate claim for unemployment benefits in February 1983. In his application petitioner stated that he had been discharged because the firm was unable to offer him a full-time position and because he had to go to New York for the bar examination. Later in the same document, however, he gave a slightly different account: he stated that he moved to New York to take the bar examination there because the firm had not made him a full-time offer and he could not afford to remain in the District of Columbia.

The Department's claims deputy found that petitioner had voluntarily left his job as a law clerk in order to move to New York and take the bar examination there. Concluding that this was a personal reason for leaving the job, the claims deputy ruled that it did not constitute "good cause connected with the work." *See* D.C.Code § 46–111(a) (1984 Supp.); 18 DCRR § 4612.1 (1981). Accordingly, the deputy ruled that petitioner was not eligible for unemployment compensation.

Petitioner appealed from this decision. At a hearing before an appeals examiner, petitioner testified that James Green, a partner at Ashcraft & Gerel, asked him in April 1982 if he would be interested in taking the New York bar examination and working in a new office which the firm was thinking about opening in the World Trade Center. The New York state legislature was then considering an amendment to its statute of limitations which, if enacted, "was expected to bring a flood of plaintiffs' litigation in the New York area" (Brief for Petitioner at 6). Having been unsuccessful thus far in his search for a full-time job after law school, petitioner found this possibility attractive. He therefore left his job at the firm's Washington office in late May and moved to New York, where he enrolled in a bar review course and took the bar examination in July 1982. He had several conversations during the summer with Mr. Green and another partner in the firm, Robert Adams, concerning his potential employment in the firm's New York office. Eventually, however, the firm decided not to open a New York office because the state legislature failed to enact the hoped-for amendment to the statute of limitations. Petitioner therefore was not re-employed by Ashcraft & Gerel.[1]

---

1. Happily, petitioner passed the New York bar examination. He is now employed as an associate with a law firm in downtown New York.

The appeals examiner affirmed the claims deputy's decision, and petitioner appealed further to the Office of Appeals and Review (OAR). Both petitioner and Ashcraft & Gerel submitted additional statements by letter to the OAR. Petitioner asserted that, in effect, he was given a leave of absence to study for the bar examination "and did not leave the employ of Ashcraft & Gerel until [he] was officially informed of [his] release by telephone during the Summer of 1982," after the firm had decided not to open a New York office. Mr. Adams, on the other hand, stated that Ashcraft & Gerel "at no time" instructed petitioner to move to New York "with the intent of becoming a full-time associate [in the] firm," and that petitioner "was never offered such a position." Mr. Adams wrote that petitioner's claims appeared to be the result of a "misunderstanding ... as to any role which he might play in this law firm's future potential expansion."

The chief of the OAR affirmed the ruling of the appeals examiner. In her decision the chief specifically took into account the letters from petitioner and Mr. Adams. Petitioner now comes to this court, contending that the Department erred in finding that he had left his employment voluntarily and without good cause connected with the work.

## II

■ Our review of the Department's decision is limited. Although both parties spend considerable energy rearguing the merits of petitioner's original claim before the Department, the only question which we must address here is whether the critical findings of the Department are supported by substantial evidence, as that term has been defined in myriad cases. *See, e.g., Washington Post Co. v. District of Columbia Unemployment Compensation Board*, 377 A.2d 436, 439 (D.C.1977).

We are satisfied in this case that there is substantial support in the record for the Department's findings and conclusions.

■ There can be no serious doubt that appellant voluntarily left his position as a law clerk in Washington to move to New York and take the bar examination there. A finding of voluntariness will be sustained if it "appear[s] from the circumstances ... that the leaving was voluntary *in fact*, within the ordinary meaning of the word 'voluntary.'" 18 DCRR § 4612.2 (1981) (emphasis ·in original). If petitioner's departure from Washington was the product of his own volition and not compelled by his employer, it was voluntary within the meaning of the statute and the regulations. *See Hockaday v. D.C. Department of Employment Services*, 443 A.2d 8, 10 (D.C. 1982).

Petitioner's application for benefits gave as the reasons for his leaving Washington the law firm's inability to offer him a full-time job, his own desire to take the New York bar examination, and the fact that he could not afford to remain in the District of Columbia. His testimony at the hearing, although claiming that he had received an "offer" from the firm to work in its New York office, made plain that he had left the firm's Washington office of his own accord in May, without any compulsion from the firm, to move to New York and take the bar examination. The letter from Mr. Adams to the OAR stated unequivocally that petitioner had received no instruction from the firm to move to New York. This evidence, in our view, provides substantial support for the Department's finding that petitioner voluntarily left his job with Ashcraft & Gerel in Washington.

■ The principal question for us to decide is whether the Department erred in finding that petitioner did not leave for good cause connected with the work, which

is fundamentally a factual question. *Kramer v. D.C. Department of Employment Services*, 447 A.2d 28, 30 (D.C.1982). In arguing that he had such good cause, petitioner relies principally on the interpretation of "connected with the work" set forth in the concurring opinion in *Gomillion v. District of Columbia Department of Employment Services*, 447 A.2d 449, 452–454 (D.C.1982), which is somewhat broader than the Department's own construction of that term in this and other cases, including *Gomillion* itself. We need not decide which interpretation should apply here, because even if we adopted the position of the concurrence in *Gomillion*, there is a factual difference between *Gomillion* and this case which is fatal to petitioner's claim.

The petitioner in *Gomillion* had what appeared to be "a firm offer of a substantially higher paying job" with another employer. *Id.* at 452. In the instant case, however, even if we assume that petitioner had an "offer" of a job in Ashcraft & Gerel's New York office, it is clear from the record that that offer was conditional, the condition being that the New York office would actually be opened. Petitioner's own testimony at the hearing supports this conclusion. Upon being asked whether the firm would have any work for him after May, petitioner answered, "They said ... it would be when they opened the [New York] office.... They never opened the office." When the legislature failed to adopt the change in the statute that the firm was anticipating, the firm decided as a result that it would not open a new office in New York. That decision also meant that the condition precedent to petitioner's employment in New York could not be met.

Unlike Mr. Gomillion's apparently firm offer of employment, petitioner's job offer (assuming that there was one) was plainly contingent. Because the contingency failed to materialize, the offer never crossed the line separating the potential from the actual. Thus petitioner never had a definite, concrete prospect of employment with Ashcraft & Gerel in New York as an associate. Without such a firm prospect, he did not have "good cause connected with the work" for leaving his Washington job, even under the more generous view of the *Gomillion* concurrence.[2]

From what we have said, it follows that the decision of the Department is supported by substantial evidence and that it is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See* D.C.Code § 1–1510(a)(3)(A), (E) (1981). It must therefore be

*Affirmed.*

---

2. Petitioner continues to maintain, as he did below, that he did not cease to be employed by Ashcraft & Gerel in May but merely went on a leave of absence to take the New York bar examination. The problem with this argument is that it necessarily assumes he had a firm commitment to rejoin the firm in New York after the bar examination was over. As we have seen, there was no such commitment, but only a contingent offer which depended on an event that never happened, the opening of the New York office. Thus the Department could not reasonably have found that petitioner took a leave of absence when he left Washington in May.