**Ann O. JOYNER, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

**Reyna's Fashions and Hartford Accident and Indemnity Company, Intervenors.**

No. 84–1676.

District of Columbia Court of Appeals.

Argued Oct. 31, 1985.

Decided Jan. 7, 1986.

William J. Skinner, Rockville, Md., for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

William P. Dale, Washington, D.C., was on brief for intervenors.

Before PRYOR, Chief Judge, and BELSON, Associate Judge, and BURGESS, Associate Judge, Superior Court of the District of Columbia.[1]

1. Sitting by designation pursuant to D.C.Code § 11–707(a) (1981).

BELSON, Associate Judge:

The Department of Employment Services (DOES) determined that petitioner Ann O. Joyner is no longer disabled for purposes of collecting workers' compensation benefits because, under its interpretation of D.C.Code § 36–308(c) (1981), she had voluntarily limited her income or failed to accept employment commensurate with her abilities. Petitioner challenges DOES' application of § 36–308(c) to her circumstances. Since we find the agency's interpretation of D.C.Code § 36–308(c) reasonable and in accordance with law, and hold that the agency order is supported by substantial evidence in the record, we affirm.

## I

Petitioner injured her back while working as a sales clerk on July 27, 1982. In a final decision entered on January 27, 1984, DOES found her temporarily totally disabled from June 1, 1983, and therefore entitled to collect workers' compensation benefits.

After her injury on the job, petitioner changed her residence five times. In December 1982, she moved from the District of Columbia area to Montana. In February 1983, she moved to Norfolk, Virginia. In April 1983, she returned to Montana. In July 1983, she moved on to Riverside, California. Finally, in April 1984, petitioner moved once more, this time to Sunnymeade, California.

While petitioner was residing in California, her counsel notified her of three specific employment opportunities in the District of Columbia area deemed suitable for her by Stanley Scher, a vocational rehabilitation expert retained by the workers' compensation insurance carrier, Hartford Accident and Indemnity Co. The notices to petitioner came in the form of letters from Mr. Scher dated March 30, April 16, and April 27, 1984. Petitioner made no effort to pursue the employment leads suggested

to her. Indeed, as of the time of the review hearing held on October 11, 1984, petitioner remained unemployed and insisted that she continued to be totally disabled. This insistence was unsupported by any medical testimony or evidence at the October 11, 1984, hearing. To the contrary, petitioner's treating physician, Stefan K. Haller, M.D., concluded on April 13, 1984, that petitioner should return to the work force, but with some limitations on her activities. Dr. Haller's September 25, 1984, activity report reaffirmed this view less than a month before the review hearing. That report stated explicitly that petitioner could work an eight hour day, again with the understanding that certain provisions were necessary to accommodate petitioner's bad back.

In July of 1984, petitioner's employer, contending that petitioner was no longer disabled, filed for review of the case pursuant to D.C.Code § 36–324 (1981). Following the hearing of October 11, 1984, the same hearing examiner who earlier had found petitioner to be disabled concluded that she had "voluntarily limited her income or failed to accept employment commensurate with her abilities" within the meaning of D.C.Code § 36–308(c), thereby warranting a determination that petitioner was no longer disabled. The Director of DOES adopted the hearing examiner's recommended order on November 28, 1984. Petitioner now seeks review by this court of the order terminating her workers' compensation benefits, in accord with D.C.Code § 36–322(b)(3) (1981).

## II

■ Given the nature of petitioner's contentions, our review is limited to determining whether the agency order disqualifying petitioner for workers' compensation benefits is in accordance with law and supported by substantial evidence in the record. D.C.Code § 1–1510(a)(3)(A) and (E) (1981), made applicable by D.C.Code § 36–322(b)(3) (1981). *See Gomillion v. District*

*of Columbia Department of Employment Services,* 447 A.2d 449, 451 (1982).

We address first the DOES interpretation of D.C.Code § 36–308(c) that the relevant labor market for determining the availability of suitable employment is the District of Columbia labor market rather than such other place a claimant may reside. Petitioner's interpretation, if accepted, would make a claimant's residence, even if outside of the Washington, D.C. metropolitan area, the touchstone for deciding the location of the relevant labor market. This dispute over how to interpret D.C.Code § 36–308(c) arises in this case because DOES based its decision against petitioner on the availability of suitable employment in the District of Columbia area rather than the Sunnymeade, California area where petitioner resided at the time of the review hearing.

■ The last sentence of D.C.Code § 36–308(c) is the subject of interpretive difficulty here:

"If the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, then his wages after becoming disabled shall be deemed to be the amount he would earn if he did not voluntarily limit his income or did accept employment commensurate with his abilities."

We note at the outset the familiar requirement that:

"particularly where there is broad delegation of authority to an administrative agency, we must give deference to a reasonable construction of the regulatory statute made by the agency."

*Hughes v. District of Columbia Department of Employment Services,* 498 A.2d 567, 570 (D.C.1985) (court upheld DOES construction of D.C.Code § 36–303(a)) (citing *Gomillion v. District of Columbia Department of Employment Services,* 447 A.2d 449, 451 (D.C.1982); *Hockaday v. District of Columbia Department of Employment Services,* 443 A.2d 8, 12 (D.C.1982); *Thomas v. District of Columbia Department of Labor,* 409 A.2d 164, 169 (D.C.

1979). Here, the statutory language that must be construed is silent on the issue of *where* "employment commensurate with [claimant's] abilities" must be located to be relevant to determining whether a claimant has voluntarily limited her income or failed to accept such employment. This case required DOES to fill in a legislative interstice.[2]

The hearing examiner's recommended order, ultimately adopted as the final order, discussed the alternative interpretations urged by the employer and claimant. The hearing examiner opted for the interpretation that the District of Columbia market should be the relevant labor market on the reasonable ground that the analogous Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.*, has been similarly interpreted. *See Elliott v. C & P Telephone Co.*, BRB No. 81–593 (Jan. 20, 1984). Furthermore, DOES urges several other grounds for upholding its interpretation of the relevant labor market. First, DOES notes that had petitioner's interpretation been accepted, the relevant labor market would have shifted five times in only two years, because of petitioner's moves from place to place across the country. Thus, DOES reasonably argues, administrative difficulties

in ascertaining the existence of suitable employment for petitioner would have been severe. A second and related problem avoided by its interpretation, the agency emphasizes, is the imposition of the unduly onerous burden on employers of analyzing a different labor market every time a claimant moves. DOES asserts that this problem would have been further exacerbated had petitioner's interpretation been accepted in this case, because it would have set a precedent whereby claimants could effectively thwart employer efforts to prove the availability of suitable employment simply by moving to depressed areas of the country where suitable employment might well not be available. Finally, DOES argues, it would be unfair if claimants who are able to move with frequency or to depressed areas were to achieve an advantage over claimants who remain in the District of Columbia area.

 Considering both the agency's reliance on a harmonious construction of the LHWCA and the persuasive delineation of the adverse consequences of alternative interpretations of § 36–308(c), we have no difficulty in upholding the agency's reasonable interpretation of § 36–308(c).[3]

2. Petitioner does not contest the agency's authority to interpret the statutory language at stake in the course of its adjudication of petitioner's case, rather than through the prior promulgation of substantive rules. In any event, we are satisfied that the agency acted within its discretion in clarifying an uncertain statutory provision where, as here, the agency "had a statutory duty to decide the issue at hand in light of the proper standards and that this duty remained 'regardless of whether those standards previously had been spelled out in a general rule or regulation.'" *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 292, 94 S.Ct. 1757, 1770, 40 L.Ed.2d 134 (1974) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201, 67 S.Ct. 1575, 1579, 91 L.Ed. 1995 (1947)). *See also Pacific Gas and Electric Co. v. Federal Power Commission*, 164 U.S.App.D.C. 371, 376, 506 F.2d 33, 38 (1974); Davis, ADMINISTRATIVE LAW TREATISE § 7.25 (1979); 1 Cooper, STATE ADMINISTRATIVE LAW, 180–81 (1965).

3. Our conclusion that the agency's interpretation of the appropriate labor market for § 36–

308(c) purposes is reasonable is not shaken by petitioner's reliance on § 36–307(b)(2)(C), which countenances the discretionary provision of follow-up care to recipients of workers' compensation benefits living outside of the Washington, D.C. metropolitan area. The myriad problems of administrative inconvenience and employer burden in establishing the availability of suitable employment in multiple locations, as well as the risk of denying evenhanded treatment of claimants who remain in the Washington, D.C. area, simply do not exist in the context of providing proper medical attention to all claimants, regardless of where they may live. Moreover, § 36–307(b)(2)(C) does not *require* that follow-up medical attention be given to claimants living outside of the Washington, D.C. area; it merely *permits* this to occur.

We are similarly unpersuaded by petitioner's argument that the DOES construction would penalize an injured claimant who was required for financial reasons to move to a distant location in order to be cared for by relatives. The Department would certainly consider such circumstances in determining whether a claimant

## III

Having sustained the DOES position that the relevant labor market is the Washington, D.C. metropolitan area, we turn now to petitioner's assertion that her failure to respond to repeated notices of the availability of suitable employment in the Washington, D.C. area is an insufficient basis for disqualifying her from further workers' compensation benefits. Once again, the outcome depends upon the proper construction of the last sentence of D.C. Code § 36–308(c). In particular, petitioner claims her conduct in failing to pursue job leads provided to her does not fall within the ambit of "voluntarily limit[ing] [her] income or fail[ing] to accept employment commensurate with [her] abilities." D.C. Code § 36–308(c).

DOES responds by noting that Mr. Scher's expert testimony in the record, which the hearing examiner accepted as credible, established that three suitable job opportunities were brought specifically to petitioner's attention in March and April of 1984, and that other suitable opportunities existed at the time of the review hearing in October 1984. Moreover, DOES urges that petitioner's interpretation of § 36–308(c), which would allow a claimant like petitioner to continue to receive benefits until she specifically refused a definite offer procured on claimant's behalf by the previous employer, as distinguished from the job leads provided here, would be unworkable.

We concur with the DOES assessment that an overly strict interpretation of § 36–308(c), particularly the word "accept," could disserve the clear, if implicit, statutory purpose of delivering benefits to those who are in need. It is significant, as the agency emphasizes, that petitioner's interpretation of § 36–308(c) would invite at least some claimants to adopt a passive, or even negative, attitude about pursuing re-employment, since workers' compensation benefits could be terminated only after the claimant refused a specific offer. There might be no specific offer if the claimant failed to take the steps usually necessary to procure offers (*e.g.,* investigating job opportunities, circulating résumés, interviewing, etc.).

■ While we do not suggest that all, or even many, claimants would take unfair advantage of the interpretation of § 36–308(c) advanced by petitioner if it were adopted, we deem the concerns expressed by DOES legitimate and reasonable.[4] Consequently, we sustain the agency's refusal to accept petitioner's interpretation of

---

had "voluntarily" limited her income or failed to accept suitable employment. Similar considerations would exist in the case of a claimant who was required to move for reasons of health, a hypothetical situation discussed at oral argument. We observe that although petitioner here asserted that she initially left this area to avail herself of the care of relatives, medical reports make it clear that by the time of the most recent hearing she no longer required such assistance.

4. The reasonableness of the DOES position is underscored by the discussion of the issue of the burden on employers seeking to prove job availability under the federal LHWCA in *Trans-State Dredging v. Benefits Review Board,* 731 F.2d 199, 201 (4th Cir.1984) (quoting *New Orleans (Gulfwide) Stevedores v. Turner,* 661 F.2d 1031, 1043 (5th Cir.1981)):

We believe some common sense standard must be adopted which allows the burden of establishing job availability to remain on the employer but makes this burden one which the employer can meet by proof short of offering the claimant a specific job or proving that some employer specifically offered claimant a job. Of course the standard should incorporate the specific capabilities of the claimant, that is, his age, background, employment history and experience, and intellectual and physical capacities.

Job availability should incorporate the answer to two questions. (1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure? This second question in effect requires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.

§ 36–308(c), in accord with our established policy of deference to the reasonable construction of statutes by agencies charged with enforcing them. *Hughes*, 498 A.2d 567, 570.

## IV

Having ruled in favor of DOES on both issues of statutory construction, we turn now to consider whether there is substantial evidence in the record to support the determination of petitioner's ineligibility for further workers' compensation benefits. The hearing examiner clearly grounded her decision on the testimony of the vocational rehabilitation specialist, Mr. Scher, and reports of Dr. Haller, petitioner's treating physician. Dr. Haller declared his patient was fit to return to work under certain conditions that would safeguard her back. In addition, Mr. Scher alerted petitioner to three suitable job opportunities which she did not pursue. Furthermore, Mr. Scher testified that additional suitable job opportunities existed in the Washington, D.C. area at the time of the review hearing. The hearing examiner, noting that the jobs Mr. Scher referred to would have paid petitioner enough to remove her from eligibility for further benefits, concluded that "claimant has voluntarily limited her income or failed to accept employment commensurate with her abilities."[5] In light of the evidence provided by Mr. Scher and Dr. Haller, we conclude that substantial evidence in the record supports the final determination of ineligibility rendered by DOES.[6]

*Affirmed.*

---

**5.** While the examiner stated her conclusion in the alternative, we take it in context to mean that petitioner could be disqualified from further compensation on either of the two stated bases, which are consistent here with one another.

**6.** Petitioner advanced other arguments which require only brief discussion. Her contention that the DOES Director was required to prepare a separate statement of the evidence on which he relied in affirming the decision of the hearing examiner is without merit. The Director may, as here, adopt the findings and conclusions of the hearing examiner without setting forth another set of findings and conclusions. *See Hill v. District Unemployment Compensation Board*, 302 A.2d 226, 228 (D.C.1973); *Wallace v. District Unemployment Compensation Board*, 289 A.2d 885, 887 (D.C.1972).

Petitioner's invocation of the "residuum rule," a doctrine adopted in varying forms by some courts and which requires that an *award* of workers' compensation be based on at least a residuum of competent evidence, *see generally* 3 A. Larson, WORKMEN'S COMPENSATION LAW § 79.-21–.30 Evidence (1984), is plainly inapposite. Even if this court were inclined to hold the residuum rule applicable to *denials* of eligibility in this jurisdiction, the DOES decision against petitioner rested on substantial competent evidence as elaborated in Part IV of this opinion, including testimony by a vocational rehabilitation expert and medical reports by petitioner's treating physician.

Petitioner also contends that differences between the workers' compensation statutes enacted to cover public sector employees and private sector employees amount to a violation of the equal protection of the law guaranteed by the Fifth Amendment. Petitioner asserts, without explanation, that the review process in private sector cases, which involves the Director of DOES and then this court, is less advantageous to claimants than the review process afforded public sector claimants, which involves the three-person Employees' Compensation Appeals Board and then the Superior Court. Since petitioner does no more than speculate as to the significance of the procedural differences in the review processes, we reject the assertion as frivolous.