David S. WHITE, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

WMATA/Hayward/Baker, Lumberman's
Mutual Casualty, Intervenors.

No. 00–AA–44.

District of Columbia Court of Appeals.

Argued Oct. 24, 2001.
Decided March 21, 2002.

Richard W. Galiher, Jr., Rockville, MD,
for petitioner.

Mary G. Weidner, with whom Marc L. Wilhite was on the brief, for intervenor.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Petitioner, David S. White, seeks review by this court of a decision of the Director of the District of Columbia Department of Employment Services affirming a determination by a hearing examiner of that agency regarding the status of White's work-related back injury. The hearing examiner, while finding that White had received an accidental injury to his right knee on October 13, 1997, which arose out of and in the course of his employment with WMATA/Hayward/Baker, also concluded that White's previous work-related back injury had resolved prior to the time that the employer ceased disbursement of workers' compensation benefits to White and denied further treatment, rehabilitation or wage loss attributable to his back condition.

In his petition for review, White asserts that the Director erred in affirming the hearing examiner's finding that his back injury had resolved because the hearing examiner failed to address or consider a treating physician's testimony to the contrary. We agree with the petitioner that the agency's determination concerning the previous work-related back injury was in contravention of our precedent that a treating physician's medical opinion must be considered and may be discarded only if sufficient reasons are given for doing so by the agency. On the present record, we make clear that no reliance can be placed on the agency's conclusions regarding the status of White's back injury. Neverthe-

less, as petitioner has no pending claims related to his back injury and was awarded the disability benefits he requested, we see no reason to remand the case for reconsideration of the issue and hereby dismiss the petition as moot.

## FACTS

The petitioner was employed as a laborer for WMATA/Hayward/Baker ("employer"), a construction contractor, when he incurred a work-related injury to his back on September 5, 1996, while doing some heavy lifting. White initially received emergency treatment at Howard University Hospital, then obtained medical treatment from the professional association of Phillips & Green, M.D.[1] Thereafter, as part of his continuing medical treatment for his back injury, White was sent to a work hardening program which began on September 12, 1997. On October 13, 1997, White slipped and fell, injuring his right knee while exiting a pool at the work hardening facility following an aquatic therapy exercise session. After MRI tests results indicated that White had sustained a right knee meniscal tear, Dr. Richard Meyer, one of his treating physicians, recommended that White undergo arthroscopic surgery.

The employer paid White disability benefits for his wage loss relating to his back injury until January 13, 1998. At that time, the employer ceased the disbursement of benefits to White due to reports from Dr. James Callan and Dr. David Johnson, orthopedic specialists who had examined the petitioner at the employer's request and found him fit to return to heavy work.[2] Thereafter, the employer

1. The hearing examiner noted that, following the work-related injury to his back, White was treated by the following orthopedic specialists at Phillips & Green: Jeffrey H. Phillips, M.D.;

Neil A. Green, M.D.; Richard S. Meyer, M.D.; and Fredric L. Salter, M.D.

2. Specifically, on November 12, 1997, Dr. Callan reported that White should proceed

refused to compensate White for any of his disability claims and declined to authorize White's requested knee surgery, claiming that the petitioner's knee injury was not related to his employment.

On June 18, 1999, a full evidentiary hearing was conducted on the matter before a hearing examiner of the District of Columbia Department of Employment Services. There, White sought an award of temporary total disability benefits under the District of Columbia Workers' Compensation Act from January 14, 1998 onward and authorization for surgery to his right knee.[3] As to the issue regarding the knee injury, the hearing examiner found in favor of White, stating that "[h]aving weighed the record evidence regarding causation, the most persuasive lay and medical evidence supports the compensability of claimant's claim related to his October 13, 1997 right knee injury," and that the "recommended arthroscopic surgery [was] reasonable and necessary." The examiner added that the claimant's impairment was to the right knee only and that "[a]ny disability related to the back strain claimant had on September 5, 1996, resolved prior to the period for which benefits are claimed. No further treatment, rehabilitation or wage loss is attributable to claimant's back condition."

White filed a timely application for review of the hearing examiner's decision with the Director of the Department of Employment Services, requesting that the Director reverse the portion of the compensation order which found that his wage loss during the period after January 14, 1998, was not related to his September 5, 1996 back injury and that no further medical treatment to the back was reasonable or necessary. According to the petitioner, the hearing examiner had failed to consider the deposition testimony of Dr. Meyer, White's primary treating physician, who opined that, as of March 19, 1998, the petitioner continued to suffer from problems related to his back and could not resume a full-time construction job. In a July 13, 2000 decision, the Director affirmed the hearing examiner's compensation order. The Director found no error in the hearing examiner's conclusions, stating that, after White's knee injury, his medical treatment focused on his knee "with little mention of his back and no treating physician imposed a specific work restriction concerning [White's] back after the knee injury." The Director explained that though one of White's treating physicians, Dr. Frederic Salter, had opined in March of 1998 that White was disabled for a period of one month, the hearing examiner had properly rejected that evidence and

immediately with surgery to the right knee and should be able to return to his usual job within two weeks after the surgery. According to Dr. Callan, no clear-cut reason was determined why the patient had been off work for over one year because of his back. On December 18, 1997, Dr. Johnson opined that White had a current work capacity for medium to heavy work and required no further treatment. Thereafter, on January 8, 1998, Dr. Johnson reported that he felt White could return to work which required lifting up to 100 pounds and, on January 13, 1998, approved White's ability to perform the duties described in the employer's "Job Analysis Form" for a general laborer.

3. The hearing examiner described the issues as follows:

1. Whether there was an October 13, 1997 accidental injury to claimant's right knee which arose out of and in the course of his employment.
2. Whether claimant's current impairment is medically causally related to his employment.
3. Nature and extent of disability, if any.
4. Whether employer should be reimbursed for claimant's failure to attend a scheduled May 25, 1999 medical examination.

had given the required reasons for her decision to credit the medical opinions of Dr. Johnson and Dr. Callan. The Director did not refer to Dr. Meyer's opinion.

## ANALYSIS

■ This court must affirm an agency decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Olson v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 1032, 1037 (D.C.1999). In a workers' compensation case, the court defers to the determination of the Director of the Department of Employment Services as long as the director's decision flows rationally from the facts which are supported by substantial evidence in the record. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996).

■ In evaluating the evidence of record, however, we have also held that the Department of Employment Services must take into account the testimony of a treating physician, which is ordinarily preferred over that of a physician retained solely for litigation purposes. *See Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 302 (D.C.2000). Though a hearing examiner may reject the testimony of a treating physician and decide to credit the testimony of another physician when there is conflicting medical evidence, *see Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1212 (D.C.1999), the agency must give reasons for such a rejection. *See Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 202 (D.C.2001) (citing *Canlas*, 723 A.2d at 1211–12).

■ On petition for review, White asserts that the director erred in affirming the hearing examiner's opinion that his back injury had resolved prior to January 14, 1998. According to the petitioner, the hearing examiner "totally ignore[d]" the September 28, 1998 deposition of treating physician Dr. Meyer, which contained Dr. Meyer's opinion that, as of March 19, 1998, White was still having back pain shooting down his leg and was limited in his ability to return to heavy construction. The hearing examiner's decision, argues White, was thus legally erroneous.

The employer responds that the director was correct in affirming the hearing examiner's finding, substantially supported by the opinions of Dr. Callan and Dr. Johnson, that White failed to prove his back condition had remained disabling after January, 1998. In addition, argues the employer, because there was a subsequent hearing before an examiner of the Department of Employment Services on June 1, 2000 which terminated White's wage loss compensation due to his knee injury, this petition should concern only whether he is entitled to compensation benefits after that date. White has not submitted any medical bills related to his back injury after January 14, 1998 and, therefore, asserts the employer, the petitioner essentially seeks an advisory opinion from this court.

Upon a review of the record in this case, we agree with White that there is no indication that the hearing examiner even considered, much less gave reasons for rejecting, Dr. Meyer's deposition testimony based on his physical examination of White, that as late as March of 1998, the petitioner was still suffering from the back injury he incurred on September 5, 1996.[4]

---

4. The hearing examiner found that "none of claimant's treating physicians imposed specific work restrictions related to claimant's back

complaints after September 7, 1997," noting that though there was in evidence a disability slip from Dr. Frederic Salter, it indicated

The case would ordinarily be remanded with instruction to the agency to consider the record in its entirety. *See Clark,* 772 A.2d at 204. We see no reason to do so here, however, because White received workers' compensation benefits until June 1, 2000, and has no present claim to such benefits after that date, rendering his instant petition moot.

 Nonetheless, we clarify that because the agency's determination concerning White's back injury did not take into account the treating physician's testimony, it may not be relied upon to deny any future claim for workers' compensation benefits arising from that injury. We do not agree with the employer that, in doing so, we are issuing an advisory opinion. Rather, we seek to protect White's legal right to a proper adjudication of his potential claims for temporary or permanent disability under the Workers' Compensation Act[5] should his work-related back injury affect his future ability to earn wages or require further treatment. We are mindful that we have previously held that D.C.Code § 32–1524 (2001), formerly D.C.Code § 36–324 (1997), sets forth "a specific procedure to revisit issues previously decided by a compensation order,"[6] which would enable White to seek relief from the hearing examiner's determination should the physical ailments associated with his back injury recur. *Short v. District of Columbia Dep't of Employment Servs.,* 723 A.2d 845, 850 (D.C.1998). However, when seeking relief from a previous compensation order under this section of the Workers' Compensation Act, the burden of showing a change in conditions which would warrant holding a hearing on the availability of such relief is clearly placed on the claimant. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.,* 703 A.2d 1225, 1229 (D.C.1997) ("The 'reason to believe' standard in § 36–324(a)(1) requires an affirmative factual showing that a change of conditions has

---

"without rationale or explanation" that White was unable to work from March, 1998 to April, 1998. Not only did the examiner and the director overlook Dr. Meyer's deposition testimony to the contrary, they also failed to address Dr. Salter's written medical evaluation form dated March 10, 1998, in which he also determined, after physical examination, that White was not fit for working duty due to his back condition. Specifically, Dr. Salter reported that White's "lumbar motions [were] approximately 80 [degrees] of forward flexion" and that "[t]enderness [was] noted in [White's] lower lumbar paraspinal region," which led him to conclude that "[White] has an ongoing chronic lumbar strain with disc findings."

5. D.C.Code § 32–1501 *et seq.* (2001), formerly D.C.Code § 36–301 *et seq.* (1997).

6. This section of the D.C. Workers' Compensation Act states in part:

(a) At any time prior to 1 year after the date of the last payment of compensation or at any time prior to 1 year after the rejection of a claim, provided, however, that in the case of a claim filed pursuant to § 32–1508(a)(3)(V) the time period shall be at any time prior to 3 years after the date of the last payment of compensation or at any time prior to 3 years after the rejection of a claim, the Mayor may, upon his own initiative or upon application of a party in interest, order a review of a compensation case pursuant to the procedures provided in § 32–1520 where there is reason to believe that a change of conditions has occurred which raises issues concerning:

(1) The fact or the degree of disability or the amount of compensation payable pursuant thereto; or

(2) The fact of eligibility or the amount of compensation payable pursuant to § 32–1509.

(b) A review ordered pursuant to subsection (a) of this section shall be limited solely to new evidence which directly addresses the alleged change of conditions.

D.C.Code § 32–1524 (2001), formerly D.C.Code § 36–324 (1997).

occurred.") (citing *Snipes v. District of Columbia Dep't of Employment Servs.,* 542 A.2d 832, 835 (D.C.1988)). Allowing the decision by the agency to stand as it now does would impose an unwarranted burden on White to show a change from the agency's current finding that his back condition has resolved. Until the agency has properly considered the treating physicians' testimony, the issue remains open, as if White were making his claim before the agency in the first instance.

*Petition dismissed.*