Thomas LOGAN, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Federal Express Corporation,
et al., Intervenors.

No. 00–AA–1619.

District of Columbia Court of Appeals.

Argued June 27, 2002.

Decided Aug. 22, 2002.

Richard W. Galiher, Jr., Rockville, MD, for petitioner.

David M. Schoenfeld, Gaithersburg, MD, for intervenor.

Robert R. Rigsby, Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before SCHWELB, FARRELL, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Petitioner seeks review of a decision of the District of Columbia Department of Employment Services (DOES) awarding

him temporary instead of permanent total disability compensation. Among other things, he contends that the hearing examiner erred in not taking into account the opinion of petitioner's treating physician that petitioner is permanently totally disabled, and erred further in placing on petitioner the burden to disprove the availability of jobs to which he could return despite his ongoing physical condition. We conclude that a remand of the case is necessary for further consideration of the evidence by the examiner under the proper standards governing permanency of a disability and employability.

## I.

Petitioner, then employed as a truck driver by intervenor, the Federal Express Corporation (Fed Ex), was injured in 1995 when a sliding side door he was opening on a delivery van became unhinged and fell on his right foot. The resulting continuous pain made him unable to perform his normal work duties, which had required him to walk significant distances; to lift, load, unload and carry packages up to seventy-five pounds; and to drive a tractor trailer truck. As the hearing examiner found, "[t]he injury has caused [petitioner's] right foot to become permanently disfigured and misshapen, such that the sole of his foot does not provide a stable platform to support his 260 to 300 pound frame and . . . causes [him] to walk on occasions with a limp," in turn causing "additional pain and discomfort in his lower back."

Fed Ex provided temporary total disability benefits and causally related medical expenses to petitioner, but by the year 2000 took the position that he was not disabled and could work full duty. Petitioner, therefore, filed this claim with DOES seeking, among other things, permanent total disability benefits from July 1998 to the present and continuing. Following an evidentiary hearing in September 2000, a hearing examiner rejected the claim for permanent benefits but awarded petitioner temporary total disability compensation from March 1999 and continuing. The examiner began by explaining that, to demonstrate entitlement to an award for permanent total disability, a claimant "must present substantial credible evidence that (1)[his] condition is maximally medically improved, and (2) that [he] is unable to return to either [his] usual, or any other, employment as a result of the injury." The examiner found that by July 1998, petitioner had reached maximum medical improvement, a fact undisputed in the medical reports. But he rejected petitioner's claim of permanency after reviewing rehabilitation and vocational evidence presented by the parties related to the issue of employability. Comparing expert vocational assessment reports filed by Dr. Bussey for the petitioner and Edward Robinson for Fed Ex, the examiner found that

[n]either of the . . . reports is very helpful in establishing what level of employability the [petitioner] possesses. Employer's report is based upon questionable assumptions concerning [petitioner's] educational attainments, while [petitioner's] report does not reveal what . . . level of physical capacity the [petitioner] is assumed to have. Although it refers to [petitioner's] treating physicians' reports, it also makes reference to the report of the [independent medical examination] physicians, which conclude that [petitioner] can return to his pre-injury employment, and the Functional Capacity Evaluation performed at the National Rehabilitation Hospital, at the direction of the treating physician, which indicated that (1) [petitioner] gave sub-maximal effort when performing some [of] the tests administered, and (2) [petitioner] has the physi-

cal capacity to perform at least sedentary work.... Thus, *while [petitioner's] report is insufficient to establish that there are no jobs to which [petitioner] could return, employer's report, while sufficient to rebut [petitioner's] report's conclusion, is insufficient to establish that [petitioner] is capable of earning any specific level of wages,* because the author of the report testified that he had not done a labor market analysis. [Italics added.]

Moreover, despite finding that the employer had rebutted petitioner's report, the examiner did not deem petitioner partially disabled, but instead concluded that

> [petitioner] has established by his credible testimony and the demonstrable deformity in his right foot that he is currently temporarily totally disabled. He has not, however, established the statutorily required elements for [permanent total disability].

Petitioner appealed the examiner's decision to the Director of DOES, and when the Director failed to issue a decision within 45 days, *see* D.C.Code § 32–1522(b)(3) (2001), petitioner sought review in this court.

## II.

Petitioner argues that the examiner erred in multiple ways in denying him permanent total disability benefits. He first contends that the determination that he had reached maximum medical improvement requires automatically that his benefits be converted to permanent status. He further argues that the examiner could not properly find that he had failed the test of permanency without coming to grips with the opinion of petitioner's treating physician, Dr. Ignacio, that he is unable to return to any form of work, sedentary or otherwise, given the limitations his pain and medication impose on his activity.

Third, pointing to part of the examiner's language italicized above, petitioner asserts that the examiner erroneously placed the burden of proof on him "to establish that there are no jobs to which claimant could return," contrary to our decisions holding that the employer must prove the availability of work for which a claimant is qualified.

Although we reject petitioner's initial argument as to the conclusive effect of a finding of maximum medical improvement, we agree that the examiner's failure to deal with the medical opinion of Dr. Ignacio, his current treating physician board-certified in rehabilitation medicine and pain management, runs athwart our decisions regarding the proper significance to be given such evidence. Furthermore, it is apparent to us that the examiner's discussion of the vocational reports in determining the nature and extent of petitioner's disability reflects confusion as to the correct allocation of the burden of proof on the issue of employability. As a result, we cannot determine "whether conclusions legally sufficient to support the decision flow rationally from the findings," *Pickrel v. District of Columbia Dep't of Employment Servs.,* 760 A.2d 199, 203 (D.C.2000) (citation and quotation marks omitted), and must therefore remand the case for further consideration in light of the legal principles summarized in the following section.

### A.

#### 1.

Under the District of Columbia Worker's Compensation Act (DCWCA) permanent total disability is a term—or a concept—of art. D.C.Code § 32–1508(1) states in relevant part:

> Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or

of any 2 thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined only if, as a result of the injury, the employee is unable to earn any wages in the same or other employment.

Relying on prior DOES decisions, the hearing examiner interpreted this definition as requiring a claimant to show (1) that his condition has reached maximum medical improvement and (2) that he is unable to return to his usual, or to any other, employment as a result of the injury.[1] With one small adjustment, these proof elements are consistent with this court's understanding of the statute. Thus, we have said that "[a] disability is *permanent* if it 'has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period.' " *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 98 n.7 (D.C.1988) (emphasis added) (citing *Crum v. General Adjustment Bureau*, 238 U.S.App.D.C. 80, 86, 738 F.2d 474, 480 (1984)); *see also* 4 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 80.04, at 80–13 (Matthew Bender ed. 2002) ("Permanent means lasting the rest of claimant's life. A condition that, according to available medical opinion, will not improve during the claimant's lifetime is deemed to be a permanent one."). Similarly, "[a] claimant suffers from *total* disability if his injuries prevent him from engaging in the only type of gainful employment for which he is qualified." *Washington Post v. District of Columbia Dep't of Employment Servs.*, 675 A.2d 37, 41 (D.C.1996) (emphasis added);

see also *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 703 A.2d 1225, 1229 (D.C.1997). "Total disability does not mean absolute helplessness, . . . and the claimant need not show that he is no longer able to do any work at all." *Washington Post*, 675 A.2d at 41 (internal citations omitted). Instead, "[a]n employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." *Id.* (quoting 4 LARSON, *supra*, § 83.01, at 83–2); *see also Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950). That is to say, the proof requirement stated by the hearing examiner that the claimant cannot return to *"any other"* employment does not include "services . . . so limited in quality, dependability or quantity that a reasonably stable market for them does not exist." *Washington Post*, 675 A.2d at 41.

■ Petitioner focuses first on the hearing examiner's determination that petitioner had reached maximum medical improvement of his condition, relying on this court's decision in *Smith, supra*, to argue that *ipso facto* he is entitled to permanent total disability. Petitioner misreads *Smith*, which dealt with an entirely unrelated question. At issue there was whether, once having received a schedule or lump sum award based on reaching maximum medical improvement, a claimant nevertheless may be awarded temporary total disability benefits for continuing wage loss arising from the same injury. This court upheld as reasonable DOES's interpretation of the statute to bar such an

---

1. *See Crawford v. Thompkins,* H & AS No. 84–240, OWC No. 0126619 (Dec. 30, 1986); *Fawley v. EGS Masonry, Inc.,* H & AS No. 82–26, OWC No. 0011335 (Nov. 19, 1986 and June 2, 1986). *See also Jones v. Hadley Mem'l Hosp.,* H & AS No. 92–207E, OWC 195191, 2001 D.C. Wrk. Comp. Lexis 205, *27 (Nov. 30, 2001).

award "once an employee reaches maximum medical improvement *and* receives a schedule award for permanent ... disability...." *Smith*, 548 A.2d at 102 (emphasis added). Thus, *Smith* does not support petitioner's argument that he was entitled to a finding of permanent disability based solely on a determination that he had reached maximum medical improvement. Indeed, that argument is inconsistent with *Smith's* recognition that "compensation under the [DCWCA] is predicated upon the loss of wage-earning capacity, or economic impairment, and not upon functional disability or physical impairment." *Id.* at 100; *see also Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 301–02 (D.C.2000) ("Harris has presented evidence that due to his injury, his physical condition has been permanently changed.... To establish a permanent disability, [however,] Harris must show that he suffered a permanent loss in wages because of his permanent change in physical condition.").

The hearing examiner was correct, therefore, in proceeding to consider whether or to what extent petitioner, despite his permanent physical condition, was still employable. As we have said, " '[T]he degree of disability in any case cannot be considered by physical condition alone, but there must [also] be taken into consideration the injured [person's] age, his industrial history, and the availability of the type of work which he can do.' " *Washington Post*, 675 A.2d at 40–41 (quoting *American Mut. Ins. Co. v. Jones*, 138 U.S.App.D.C. 269, 271, 426 F.2d 1263, 1265 (1970)); *see also Crum*, 238 U.S.App.D.C. at 85, 738 F.2d at 479 (in determining extent of disability, relevant factors include "the claimant's age, physical condition, work experience, and [the] availability of other work"). Whereas it is presumed that a claim for workers' compensation comes within the provisions of the statute, *see* D.C.Code § 32–1521(1), the claimant "is not entitled to a presumption that his injury left him totally and permanently disabled." *Dunston v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 109, 111 (D.C. 1986). Rather, the claimant must affirmatively show "the nature and extent" of his disability. *Id.*

### 2.

■ Deciding the extent of disability in any case has both a procedural and a substantive component. In *Crum, supra,* the District of Columbia Circuit pointed out that "the [Department of Labor's Benefits Review] Board and the courts have utilized [a] burden-shifting device ... as an aid to the evaluation of such evidence," namely:

> In order to be found disabled, claimant must establish an inability to return to his usual employment. Once claimant has made [this] showing, the burden shifts to the employer to establish suitable alternate employment opportunities available to claimant considering his age, education and work experience.

238 U.S.App.D.C. at 85, 738 F.2d at 479 (quoting the Board).[2] Thus, "[o]nce the claimant demonstrates inability to perform his or her usual job, a *prima facie* case of total disability is established, which the employer may then seek to rebut by establishing the availability of other jobs which the claimant could perform." *Id.* This scheme is consistent with this court's holding that "the burden is on the employer to prove that work for which the claimant

---

**2.** This court "give[s] considerable deference to [non-binding] decisions of the D.C. Circuit interpreting the [Longshore and Harbor Workers' Compensation] Act," the predeces-

sor to this jurisdiction's statute. *Beta Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 748 A.2d 427, 431 n. 4 (D.C. 2000).

was qualified was in fact available." *Washington Post*, 675 A.2d at 41 (quoting *Joyner v. District of Columbia Dep't of Employment Servs.*, 502 A.2d 1027, 1031 n. 4 (D.C.1986)). We went on to explain in *Washington Post* "that the employer can meet this burden 'by proof short of offering the claimant a specific job or proving that some employer specifically offered claimant a job.'" *Id.* (quoting *Joyner*, 502 A.2d at 1031 n. 4). Rather, as we had said in *Joyner*, quoting with approval decisions interpreting the federal act, see note 4, *infra*, "[j]ob availability should incorporate the answer to two [substantive] questions":

(1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure? This second question in effect requires a determination of whether there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job.

502 A.2d at 1031 n. 4 (citations omitted).

The employer's showing must address these questions and may be challenged by the claimant as to either answer. Moreover, even if the employer has shown "a reasonable likelihood ... that [the claimant] would be hired if he diligently sought

[a] job," *Joyner*, 502 A.2d at 1031 n. 4, a substantial body of law holds that "the claimant may still establish disability by showing that he has diligently sought appropriate employment, but has been unable to secure it." *Newport News Shipbuilding & Dry Dock Co. v. Tann*, 841 F.2d 540, 542 (4th Cir.1988) (citing *Trans–State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 200 (4th Cir.1984)).[3] *Accord, e.g., DM & IR Ry. Co. v. Director, Office of Workers' Comp. Programs*, 151 F.3d 1120, 1123 (8th Cir.1998); *Edwards v. Director, Office of Workers Comp. Programs*, 999 F.2d 1374, 1376 n. 2 (9th Cir.1993); *CNA Ins. Co. v. Legrow*, 935 F.2d 430, 434 (1st Cir.1991); *Palombo v. Director, Office of Workers' Comp. Programs*, 937 F.2d 70, 73 (2d Cir.1991). That principle too is consistent with our decisions, and we adopt it.

■ To summarize, once a claimant establishes a *prima facie* case of total disability, the employer must present sufficient evidence of suitable job availability to overcome a finding of total disability. If the employer meets that evidentiary burden, the claimant may refute the employer's presentation—thereby sustaining a finding of total disability—either by challenging the legitimacy of the employer's evidence of available employment or by demonstrating diligence, but a lack of success, in obtaining other employment.[4] Absent either showing by the claimant, he is entitled only to a finding of partial disability. *See Palombo*, 937 F.2d at 73; *Director, Office of Workers' Comp. Programs*

---

**3.** *Trans–State Dredging* was the federal decision quoted approvingly by this court in *Joyner*. *See* 502 A.2d at 1031 n. 4.

**4.** "[T]he claimant ... is not required to show that he tried to get the identical jobs the employer showed were available. The claim-

ant must merely show that he was reasonably diligent in attempting to secure a job 'within the compass of employment opportunities shown by the employer to be reasonably attainable and available.'" *Palombo*, 937 F.2d at 74 (citation omitted).

*v. Berkstresser*, 287 U.S.App.D.C. 266, 272, 921 F.2d 306, 312 (1991).

## B.

◼◼◼◼ Review of the hearing examiner's decision in light of the foregoing principles, substantive and procedural, leads us to conclude that the case must be remanded for further consideration of the extent of petitioner's disability. The examiner implicitly found that petitioner had shown he was unable to return to his usual employment, which entailed, among other things, lifting and carrying packages of considerable weight. In the language of *Crum*, petitioner had made out "a *prima facie* case of total disability." 238 U.S.App.D.C. at 85, 738 F.2d at 479. That seems to us indisputably correct. The defects in the examiner's analysis, however, begin with the fact that he appeared to place on petitioner the burden "to establish that there are no [other] jobs to which claimant could return." We say "appeared to" because, after finding petitioner's vocational report "insufficient to establish" that fact, the examiner also found that the employer's report was "sufficient to rebut" the conclusion of petitioner's expert that he could not obtain and keep work at all, even sedentary work—implying that the examiner correctly recognized the employer's burden. At the least, we think this cryptic analysis (which neither acknowledged nor quoted the relevant language of *Washington Post* or *Joyner*) leaves substantial uncertainty whether the examiner properly evaluated the testimony of the employer's expert, Robinson, as to the "reasonable likelihood" that petitioner would receive employment if he diligently pursued it. *See Joyner*, 502 A.2d at 1031 n. 4.[5] And that evaluation is key, as we have seen, because upon its outcome may depend whether petitioner is entitled to total rather than only partial disability benefits. *Palombo, supra.*[6] We express no opinion as to whether Fed Ex made the necessary showing in rebuttal; in the first instance it is for the examiner to make that assessment. The legal framework described earlier is intended only to ensure that he does so applying the right standards, including the proper assignment of burden of proof.

◼◼◼◼ The additional reason why we remand is that the examiner's decision failed to address—or even to mention—the conclusion of petitioner's current treating physician, Dr. Ignacio, that petitioner would be unable to perform even sedentary duties in the future, and so was permanently totally disabled. Most recently, the court stated in this regard:

> In evaluating the evidence of record . . . [DOES] must take into account the testimony of a treating physician, which is ordinarily preferred over that of a physician retained solely for litigation pur-

---

5. We observe that, although it is enough under *Joyner* for the employer to show "that a range of jobs exists that is reasonably available and that the disabled employee could realistically secure and perform," *Bunge Corp. v. Carlisle*, 227 F.3d 934, 941 (7th Cir.2000), this showing must be specific enough to show compatibility between the claimant's actual skills and limitations and the duties of the proffered job positions. *See id.* at 942 ("[A] report simply matching general statements of [the claimant's] job skills with general descriptions of jobs fitting those skills is not enough to show that suitable employment alternatives existed for [him].").

6. The examiner noted petitioner's testimony (a) "that he has previously requested consideration for employment with [Fed Ex] in at least two positions, one being a dispatcher type position in the employer's 'key room,' which, at least at that time, [petitioner] felt he could do"; but that (b) "other than the request for consideration of the key room job, he has made no efforts to locate new employment." This evidence too would need to be evaluated in the event the examiner concludes that the employer rebutted petitioner's *prima facie* case. *See Newport News Shipbuilding*, 841 F.2d at 543–44.

poses.... Though a hearing examiner may reject the testimony of a treating physician and decide to credit the testimony of another physician when there is conflicting medical evidence, ... the agency must give reasons for such a rejection.

*White v. District of Columbia Dep't of Employment Servs.*, 793 A.2d 1255, 1258 (D.C.2002) (internal citations omitted). As the premise of his opinion that work was reasonably available for petitioner, Fed Ex's vocational expert took it as given that petitioner could perform at least sedentary duties. Dr. Ignacio's opinion clashes sharply with that premise. While other medical evidence of record presents a distinctly different picture of the extent of petitioner's disability than does Dr. Ignacio, the examiner must consider that evidence in juxtaposition to Dr. Ignacio's opinion, and if the examiner chooses to reject the latter, he must explain why.

For the reasons stated, the decision of the Director is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*