*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-AA-0279

HOWARD UNIVERSITY HOSPITAL, *et al*., PETITIONERS,

V.

D.C. DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

CAROLINE MCCALL, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(2023-CRB-000068)

(Hon. Donna J. Henderson, Administrative Law Judge)

(Submitted November 4, 2025                    Decided February 26, 2026)

*Matthew E. Fioravante* and *Sheryl A. Tirocchi* and were on the brief for petitioners.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, filed a Statement in Lieu of Brief for respondent.

*Krista DeSmyter* and *Kevin H. Stillman* were on the brief for intervenor.

Before EASTERLY, DEAHL, and SHANKER, *Associate Judges*.

DEAHL, *Associate Judge*: Caroline McCall worked at Howard University Hospital for over twenty years until December 2020, when she resigned after experiencing years of hand pain and twice undergoing surgery on her right hand because of bilateral carpal tunnel syndrome. After her resignation, McCall applied for temporary total disability benefits under the D.C. Workers' Compensation Act. An Administrative Law Judge concluded that McCall's carpal tunnel syndrome was an "occupational disease" that caused her to resign and granted her claim for temporary total disability benefits. The ALJ's order was upheld by the Compensation Review Board (CRB).

Howard now petitions this court for review of the CRB's decision. It argues that (1) the CRB applied the wrong legal standard for evaluating whether McCall could perform the duties of her "usual job"; (2) the CRB's findings were not supported by substantial evidence; and (3) the CRB should have remanded to the ALJ to evaluate whether McCall voluntarily retired for reasons unrelated to her disability. We disagree and affirm.

## I. Factual and Procedural Background

From April 1998 to December 2020, Caroline McCall worked as a Clinical Systems Coordinator in the Perioperative Services Department at Howard University Hospital. Her primary job was to manage the Department's inventory

control and information technology systems, though her specific duties changed over time. Her original duties involved ordering supplies for seven sub-departments within Perioperative Services, tracking and stocking those supplies, and working regularly with vendors and hospital staff to manage inventory. By 2008, she was also tasked with managing the department's software system, training staff to use this system, creating databases for sub-departments, and tracking "[a]ny [body] tissue that came into the hospital."

McCall began experiencing hand and arm pain on her left side in February 2013. By 2016 the pain had spread to both sides, and a doctor diagnosed her with bilateral carpal tunnel syndrome caused by "intense hand activity at the workplace." A different doctor confirmed that diagnosis and recommended surgery, which McCall received on her right side in January 2017. The surgery put McCall out of work for four months, and the hospital voluntarily paid her temporary total disability benefits during this period. Her doctor medically cleared her to return to work but only if she was provided with certain accommodations, including an ergonomic desk setup, limited lifting, and frequent breaks. Although McCall received help lifting boxes when she returned, her keyboarding duties increased, and she claims the hospital did not give her a new desk because of financial concerns.

McCall's pain still had not abated by 2018, so she sought treatment from Dr. Garth Smith. Like the previous doctors, Dr. Smith characterized her carpal tunnel as "[w]ork related," and he recommended a second surgery on her right side. This surgery, which took place in January 2019, involved "fat grafting" and "revision decompression" to protect the median nerve of her right wrist. Howard again paid McCall disability benefits while she was out of work after that surgery. McCall's occupational therapist noted several months later that she would "benefit from returning to work on restricted duty" with limits on lifting as well as an "L"-shaped desk with an ergonomic chair and two keyboards and two monitors to reduce stress on her upper body and extremities. Dr. Smith's recommendation was consistent with this list of accommodations and stated that McCall could not "fully perform all of the essential functions" of her job without them.

When McCall returned to work, Howard did not provide all of the prescribed accommodations. Although she was given an ergonomic chair and a gel pad for her mouse, she was not given an "L"-shaped desk or a second computer with a separate keyboard.[1] In addition, her keyboard was placed in a tray with a metal rod that ran

---

[1] Howard did provide McCall with a second monitor, but it connected to the same computer as the original monitor, which did not account for the fact that her accommodations recommended two separate computers with separate keyboards to avoid head-turning. The hospital also provided her with a laptop, but without an ergonomic keyboard or mouse.

across the base of her hands and irritated the fat graft in her right wrist. She asked for her desk setup to be corrected, but it never was, though Howard did replace her keyboard tray with a gel pad at some point.

McCall also assumed new job duties when she returned to work. On top of her inventory and tissue "graft tracking" responsibilities, McCall had to "implement a new surgical system" and train the operating room and endoscopy staff on how to use the new system. In addition, she had to manage the "blood bank machine" after one of the operating room managers left. When Dr. Smith evaluated McCall in September 2020, he recommended left hand surgery and noted that she was still experiencing wrist and joint pain that had "occur[red] in the context of an injury at work."

In December 2020, McCall resigned from the hospital. She stated in her two-week notice letter that she had "decided to make a life changing decision" and was "retiring" with "reservation," noting that she had stayed at the hospital "as long as [she] could." McCall testified that she left because her supervisors "kept adding more responsibility" and by the end she was "mentally [and] physically exhausted" and "didn't feel [she] could take it anymore." She added later that she did not want to resign, especially because she had recently received a raise, but that by December her "hands were hurting so bad [she] couldn't go back" to her job.

Two weeks after McCall resigned, the hospital arranged for her to attend an independent medical evaluation with Dr. Noah Raizman. Dr. Raizman confirmed that McCall had "resolved carpal tunnel syndrome" on her right side and lingering hand pain on both sides. But he found "no clear occupational basis" for these symptoms. In addition, Dr. Raizman stated he was "skeptical" about the original diagnosis that her conditions stemmed from her work, and he noted as an aside that McCall told him she had quit "because a coworker also left" and because she felt "overwhelmed" and "bombarded with work." He concluded that her injuries had reached "maximum medical improvement" and that she "would be capable of full duty work in her prior position as a peri-operative nursing coordinator." McCall contested this conclusion, claiming that Dr. Raizman had only reviewed her written job description and did not know what her job "actually required."

Several months later, McCall reached out to the hospital and requested a part-time or remote role in her old department. After hearing nothing from the hospital, she sought remote work elsewhere with no success. Later, when asked if she would return to her old department and work on an "as-needed" basis, McCall said she would if her accommodations were met or if she could work from home. She added that she could perform most of her previous role from home and that she could focus on her computer duties without having to lift boxes or manage inventory.

McCall then applied for temporary total disability benefits from December 2020 to the present. After a formal hearing, the ALJ concluded that McCall was "temporarily totally disabled" and awarded her benefits dating back to December 2020. The ALJ found McCall's testimony about her pain and symptoms, her increased job duties, and the hospital's failure to accommodate her to be "credible based upon her behavior and demeanor." The ALJ also found that McCall's carpal tunnel syndrome was "medically causally related to her job" based on her "treating physician's current attribution of her symptoms to her occupational duties." Applying the test set forth in *Logan v. D.C. Dep't of Emp. Servs.*, 805 A.2d 237 (D.C. 2002), the ALJ concluded that McCall was temporarily totally disabled, noting that she had not "voluntarily limited her income" because her position had changed and Howard "failed to make the accommodations necessary for her to return to work." The CRB affirmed the ALJ's order, holding that the ALJ properly applied the *Logan* test and based her decision on substantial evidence. Howard now challenges that ruling.

## II. Analysis

The main dispute between the parties is whether McCall's carpal tunnel syndrome amounted to a "total disability" under the framework set forth in *Logan*,

805 A.2d at 242-43.[2] The CRB affirmed the ALJ's order, and we review the CRB's decision to determine if it "flows rationally from the facts" and if "those facts are supported by substantial evidence on the record." *Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 329 A.3d 292, 295 (D.C. 2025); *see id.* (noting that our standard of review "mirrors that which the [CRB] is bound to apply" to the ALJ's decision).

Under *Logan*, an employee has the burden of making out a prima facie case of total disability, which they can do by showing that they cannot return to their "usual job." *Logan*, 805 A.2d at 242-43 (citing *Crum v. Gen. Adjustment Bureau*, 738 F.2d 474, 479 (D.C. Cir. 1984)). If an employee makes out that case, the burden shifts to the employer to present evidence that the claimant could perform a different position based on their age, vocational background, and physical and mental ability. *See id.* at 243. The employee can then refute that by challenging the employer's evidence or by demonstrating their own diligence, but lack of success, in finding another job. *See id.* Notably, if the employee "voluntarily limits [her] income" by retiring for reasons unrelated to her disability, she is not eligible for benefits. *Baliles v. D.C. Dep't of Emp. Servs.*, 728 A.2d 661, 664-65 (D.C. 1999).

---

[2] Howard Hospital does not challenge the holding that McCall's carpal tunnel syndrome was medically caused by her job, and McCall agrees that her disability is only "temporary" in nature.

Howard argues that the CRB (1) applied the incorrect legal standard when it held McCall could not return to her "usual job" by reference to her job duties as they existed in December 2020, as opposed to 2013; (2) failed to base its decision on substantial evidence; and (3) should have remanded because the ALJ failed to consider its defense that McCall retired for reasons unrelated to her disability. We consider these arguments in turn.

*A. The CRB applied the correct legal standard in evaluating McCall's claim for temporary total disability benefits*

Howard argues that the relevant question for determining whether McCall could perform her "usual job" under the first step of *Logan* is "whether the claimant is currently able to perform the job that they held at the time of their injury." Because McCall's injury first arose in early 2013, the argument goes that the ALJ and the CRB should have evaluated *Logan* step one by reference to her job duties as they existed in 2013, rather than when she resigned in December 2020.

Howard's claim hinges on interpreting the phrase "usual job" from *Logan* to mean "pre-injury" job. It is true that we and the CRB often analyze total disability claims under *Logan* by evaluating whether a claimant employee can perform their "pre-injury" job. *See, e.g.*, *Miranda v. D.C. Dep't of Emp. Servs.*, 257 A.3d 467, 470 (D.C. 2021) (using the phrase "pre-injury job" when describing *Logan* step one).

What the hospital misses, however, is that McCall's situation is different from the classic workers' compensation case, where a single work-related accident causes a discrete injury. *See id.* at 469 (involving a single knee injury that required multiple surgeries). In those cases, there is no difference between the claimant's "usual" and "pre-injury" jobs because their single accident/injury marks the moment when they could no longer work. But where a claimant has a chronic medical condition, the latest manifestation of which has allegedly rendered them totally disabled, "pre-injury job" could mean either (a) the job the claimant held just before their initial symptoms; or (b) the job they held when their most recent symptoms gave rise to their present disability claim.

The *Logan* step one inquiry focuses on the latter—i.e., whether a claimant can perform the duties of their job at the time they began experiencing the symptoms that gave rise to their disability claim. *See Rocha-Guzmán v. D.C. Dep't of Emp. Servs.*, 170 A.3d 170, 177-79 (D.C. 2017) (describing the "relevant time-frame" for a total disability claim as the period for which the claimant requested benefits). Here, the CRB correctly evaluated whether McCall could return to her "usual job" under *Logan* by reference to her job duties as they existed in December 2020, when she allegedly could no longer work because of her carpal tunnel symptoms, rather than in February 2013, when she first sought treatment for her hand pain.

*B. Substantial evidence supports the CRB's holding that McCall was entitled to temporary total disability benefits*

We now turn to the evidentiary basis for the CRB's decision that McCall was entitled to temporary total disability benefits. In affirming the ALJ's order, the CRB upheld the ALJ's finding that McCall could not perform her "usual job" because Howard "added the duties of several positions." The CRB then ruled that substantial evidence supported the ALJ's finding that McCall "did not unreasonably refuse to continue in [her] position" because (1) McCall's tasks "had changed"; (2) Howard did not provide all of her required accommodations; and (3) Howard ignored her request for a "lighter duty" position.

Like the CRB, we see no reason to disturb the ALJ's findings. On the first step of *Logan*, McCall testified that she assumed several new duties when she returned to work after her second carpal tunnel surgery—for example, she had to implement a new surgical system and manage the "blood bank machine"—and her doctor told Howard that she could not perform her job without certain accommodations. Some of these accommodations were never provided to McCall, and she testified that, by December 2020, her hands were "hurting so bad [she] couldn't go back" to work. As for suitable job alternatives, even assuming Howard could rebut McCall's prima facie case under the second step of *Logan*, McCall testified that she requested a part-time or remote job at Howard to no avail and could

not find a job elsewhere. *See Logan*, 805 A.2d at 243. The ALJ's order is thus supported by substantial evidence.

Howard raises several counterpoints. First, it argues that the ALJ erred by failing to consider Dr. Raizman's opinion, in a medical evaluation after McCall's resignation, that she "would be capable of full duty work in her prior position as a peri-operative nursing coordinator." The CRB rejected that argument because Dr. Raizman's opinion was not "wholly ignored" by the ALJ and, in any event, "no explanation is required" for rejecting an independent medical opinion. *See Marriott Int'l v. D.C. Dep't of Emp. Servs.*, 834 A.2d 882, 886 (D.C. 2003) ("Except in the case of treating physicians, the [ALJ] is not required to give reasons for rejecting medical evidence of one party that conflicts with medical evidence presented by another party.").

Howard is correct that, while the ALJ addressed the portion of Dr. Raizman's opinion regarding medical causation, she did not directly address his statement that McCall was "capable of full duty work in her prior position." *Contra id.* (describing the ALJ's decision to credit one doctor over another as "amply justified"). That is a somewhat troubling oversight, but not a fatal one. As the CRB noted, the ALJ found Raizman's opinion was "questionable" as to whether McCall's carpal tunnel symptoms were "occupationally related" because he contradicted her "treating

physician's current attribution of her symptoms to her occupational duties."[3]  And as for his opinion that McCall was "capable of full duty work," Raizman noted only that he had "reviewed her job description," which did not include the additional job duties she assumed, and he did not reference the accommodations that her doctors deemed were necessary for her to return to work.  The ALJ found that McCall was released to "full-duty, full-time work with accommodations" and could not perform her usual job because Howard "failed to meet the accommodations [her] treating physician prescribed."  By making these findings, the ALJ necessarily declined to credit Raizman's opinion, and the ALJ's failure to explicitly say as much is not grounds for reversal.  *See Miranda*, 257 A.3d at 471 (noting that we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").  It is obvious enough from the ALJ's order that she rejected Raizman's conclusion on this point.

Howard also argues that the ALJ "ignored significant material evidence in the record" by failing to construe McCall's two-week notice letter and her testimony about why she left Howard as evidence of a voluntary resignation.  *See Darden v.*

---

[3] The ALJ never identified who McCall's "treating physician" was at the time of her claim.  One of the cited exhibits refers to Dr. Smith, who reported in September 2020 that McCall was still experiencing joint pain that "occur[red] in the context of an injury at work."  The record also shows that McCall began treatment with Dr. Kevin O'Malley in September 2021.

*D.C. Dep't of Emp. Servs.*, 911 A.2d 410, 416 (D.C. 2006) ("An agency fails to base its decision on substantial evidence . . . when it ignores material evidence in the record."). Howard cites portions of McCall's testimony that suggest she left her job because, for example, her supervisors "kept adding more responsibility." But McCall also testified that this extra work made her hand pain worse, to the point where it was "so bad [she] couldn't go back" to work. In any event, neither McCall's notice letter nor her varying explanations for why she left were ignored by the ALJ, which acknowledged the conflicting evidence and weighed it in a manner that is outside of our purview to reassess on appeal. *See Marriott*, 834 A.2d at 885 ("If substantial evidence exists to support the hearing examiner's findings, the existence of substantial evidence to the contrary does not permit [us] to substitute [our] judgment for that of the examiner.").

Finally, Howard challenges the ALJ's finding that it "failed to comply" with McCall's prescribed accommodations, which factored into the holding that McCall was temporarily totally disabled. It is certainly true that Howard provided *some* of the accommodations McCall's doctor prescribed in 2017, including an ergonomic keyboard, a gel mouse pad, and an adjustable chair. But when McCall returned to work in 2020, the hospital did not give her an "L"-shaped desk or a second computer with a separate keyboard, which were both listed as required accommodations. Even if one might find these requests trivial, the CRB was correct to note that "some

accommodations can matter more than others," and the hospital did not explain why it failed to provide them all. Substantial evidence thus supports the ALJ's findings that Howard failed to provide all of the necessary accommodations for McCall to perform her then-existing job duties.

*C. The CRB did not err in determining that McCall was forced to resign because of her injury and did not voluntarily limit her income*

Howard's final claim, which overlaps significantly with its general substantial evidence claim, is that the CRB should have remanded the case to the ALJ because she failed to consider its argument that McCall retired for reasons unrelated to her carpal tunnel syndrome and was thus ineligible for disability benefits under *Baliles*, 728 A.2d 661. In *Baliles*, we held that a claimant who retired from his job had "voluntarily limited his income" and could not collect disability benefits because he was "cleared by his treating physician to return to his normal job" and "nothing in the record" suggested his retirement was related to an earlier work injury. *Id.* at 665. By contrast, McCall's treating physician cleared her to return to work only with certain accommodations, and the ALJ found that Howard "failed to make the accommodations necessary for her to return to work." In addition, McCall testified that she wanted to return to Howard in a different role but was ignored. *See Howard*, 329 A.3d at 296 ("To prove a claimant has voluntarily limited [her] income, the

employer must demonstrate the availability of suitable jobs that the employee has foregone"). Given this evidence in the record, *Baliles* does not help Howard's case.

We are also not persuaded that the ALJ failed to consider Howard's voluntary retirement argument in the first instance. Although the ALJ never specifically cited *Baliles* in her order, she "reject[ed]" Howard's argument that McCall "simply could not stand the stress of her pre-injury position" and found that McCall "did not unreasonably resign" from her position. These findings adequately addressed Howard's argument, and the ALJ had a strong foundation for characterizing McCall's departure as a resignation as opposed to a retirement. *Cf. Wash. Metro. Area Transit Auth. v. D.C. Dep't of Emp. Servs.*, 731 A.2d 845, 846 (D.C. 1999) (affirming that a claimant can collect disability benefits in addition to retirement benefits from their employer).

It is true, as Howard stresses, that McCall initially described herself as "retiring," but her word choice does not have talismanic legal effect. However she described the basis for her departure, the key question remains whether McCall left because of her work-related injury or for unrelated reasons. We acknowledge that there is some evidence suggesting that McCall left her job at the hospital at least in part because her supervisors gave her too much work and she simply no longer wanted to work there. But, again, our role is not to reweigh the evidence as

factfinders. *See Howard*, 329 A.3d at 295. The ALJ weighed all the evidence and found that McCall left the hospital because of her worsening carpal tunnel symptoms and because the hospital failed to provide certain accommodations. That finding was supported by substantial evidence, and the CRB did not err in upholding it.

## III. Conclusion

For the foregoing reasons, we affirm the CRB's decision.

*So ordered.*