478 So.2d 1168 (1985)
CENVILL DEVELOPMENT CORP. and E.S.I.S., Inc., Appellants,
v.
Tomas CANDELO, Appellee.
No. BF-252.
District Court of Appeal of Florida, First District.
November 27, 1985.
Rehearing Denied December 23, 1985.
*1169 James R. Merola, of Merola & Cox, P.A., Palm Beach, for appellants.
Stuart F. Suskin, of Abrams & Suskin, North Miami Beach, for appellee.
NIMMONS, Judge.
Employer/Carrier appeals from a workers' compensation order finding, in part, that claimant is entitled to wage loss benefits despite his illegal alien status. We reverse.
Claimant, a 47 year old male, suffered a compensable injury to his lower back on September 14, 1981 while lifting a heavy desk. Claimant has been left with a 20% permanent partial impairment of the body as a whole. Claimant has a third grade education in his native country of Colombia and speaks and understands very little English. His job history consists primarily of gardening and landscaping work and other agricultural work. His duties with the employer herein included cleaning apartments and moving heavy appliances.
The issue in dispute involves claimant's status as an illegal alien, which status he admits. Claimant has never been issued a card with an alien registration number, a so-called "green card." There is conflicting evidence regarding what happened when he was initially hired. An alien registration number appears on his job application. Next to it, the initials "R.K." appear, representing Robert Kratchoff, the agent of the employer responsible for checking green cards.
Although the deputy commissioner accepted the claimant's testimony that he did not know that possession of a valid green card was required to obtain legal work in this country, the deputy found that the fact that the job application reflected an alien registration number indicated that the claimant presented a green card at the time claimant was employed.[1]
After the accident, claimant was rehired by the employer to do light duty work, but was terminated when he could not produce a green card. Claimant has continued to look for work and has in fact been hired at various places. The employer is willing to rehire claimant in a light duty position within his restrictions if he attains legal alien status and produces a valid green card. The deputy also found that there were at least two employers who would have hired claimant but for his illegal alien status. The deputy found that the claimant had worked for various amounts during limited periods and that claimant's diminished earnings were due primarily to his compensable injury.
Claimant received all appropriate compensation benefits through July 31, 1984, and there are presently no claimed outstanding medical bills. The claim herein is for wage loss benefits from August 1, 1984 through November 30, 1984. After hearing, the deputy made findings as noted above, and ruled that claimant had made an *1170 adequate work search, and that it was the employer's duty to verify all alien registration numbers, in the absence of which the employer is estopped from asserting claimant's alien status as a defense to the claim for wage loss benefits.
The issue we must determine is when, if ever, the status of an unauthorized alien can be considered in determining whether a work search has been adequate to entitle the claimant to wage loss benefits. We disagree with the deputy commissioner, who placed a burden on the employer to verify alien registration numbers or be estopped from asserting the status of the unauthorized alien. We hold instead that the employer is estopped from asserting the status of an unauthorized alien only where he knew or should have known of the true status of the employee. This holding prevents unauthorized aliens from suffering at the hands of an employer who would knowingly hire the alien and then conveniently use the unauthorized alien status to avoid paying wage loss benefits. It also protects an employer who, through no fault of his own, would end up paying continued wage loss benefits to an employee who cannot legally be employed. The law of Florida does not impose upon an employer the burden of verifying forged or borrowed green cards. See Section 448.09,[2] Florida Statutes. Neither is there any such federal requirement.[3]
Performing a good faith job search is a method by which a claimant may demonstrate a causal link between his injury and his alleged wage loss. City of Clermont v. Rumph, 450 So.2d 573 (Fla. 1st DCA 1984). However, where the claimant may not legally be employed, a work search, no matter how exhaustive, will not adequately demonstrate such a causal link, unless, of course, the employer is estopped from raising the issue of the claimant's unauthorized status. Our decision in no way conflicts with the Workers' Compensation Act's definition of "employee"[4] which includes aliens not legally entitled to be employed. Illegal aliens indeed are entitled under the statute to workers' compensation benefits. However, entitlement to wage loss benefits is based on proof of a connection between the injury and the alleged wage loss. One method of demonstrating that connection is by an adequate good faith work search. Use of that method is unavailing in circumstances such as this where the claimant may not legally be employed because of his illegal alien status. That is not to say that such a claimant is foreclosed from demonstrating entitlement to wage loss through other allowable means such as where the injuries are severe enough to excuse a work search.
From the evidence presented, the employer/carrier is not estopped from raising the claimant's illegal alien status and we find that the claimant has failed to carry his burden in proving the requisite connection between the injury and the alleged wage loss.
REVERSED.
BOOTH, C.J., concurs.
ZEHMER, J., concurs in part and dissents in part.
ZEHMER, Judge, concurring and dissenting.
I agree with everything stated in the majority opinion except the last paragraph. I would remand for further findings of fact.
*1171 Our opinion has articulated a statutory construction and application of the law of estoppel regarding the employer's right to assert the claimant's unauthorized alien status, which differs from the legal principles applied by the deputy commissioner. We have thereby injected a new factual issue that was not the focus of the deputy commissioner's fact-finding endeavors. That issue is whether the employer knew or should have known the true status of the claimant as an unauthorized alien. The majority opinion correctly recognizes that the evidence on this issue is unclear and conflicting. It is not our province as an appellate court to make de novo findings of fact from the record, but only to review the findings of fact made by the deputy commissioner. Since the deputy commissioner as the trier of fact made no such finding, I would remand the case for further findings on this precise factual issue, on the present record or, in the discretion of the deputy, on additional evidence presented by the parties.
NOTES
[1] Presumably, the green card belonged to someone else although the identity of the owner was never established. Such cards apparently bear a photograph of the owner but there is no testimony in this case indicating whose likeness appeared on the subject card. No such card was introduced into evidence.
[2] "It shall be unlawful for any person knowingly to employ... an alien who is not authorized to work by the immigration laws or the Attorney General of the United States." (Emphasis added).
[3] 8 U.S.C. § 1324(a) specifically excludes employment of illegal aliens from the offenses punishable in connection with harboring such aliens. See, also, NLRB v. Apollo Tire Co., Inc., 604 F.2d 1180 (9th Cir.1979) (reinstating illegal aliens with their employer where the firing constituted an unfair labor practice).
[4] Section 440.02(11)(a), Florida Statutes. See, also Gene's Harvesting v. Rodriquez, 421 So.2d 701 (Fla. 1st DCA, 1982) (holding that claimant who was an alien illegally in the country was not precluded from benefits for work related injury).