**Jose RIVERA, Petitioner,**

v.

**UNITED MASONRY, INCORPORATED and Liberty Mutual Insurance Company and Director, Office of Workers' Compensation Program, U.S. Department of Labor, Respondents.**

No. 90–1615.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1991.

Decided Nov. 5, 1991.

David M. Schloss, Washington, D.C., for petitioner. Patrick M. Regan, Washington, D.C., also entered an appearance, for petitioner.

James G. Healy, Rockville, Md., for respondents. Michael S. Hertzig, Attorney, Dept. of Labor, and Donald P. Maiberger, Washington, D.C., also entered an appearance, for respondents.

Before EDWARDS, WILLIAMS and RANDOLPH, Circuit Judges.

STEPHEN F. WILLIAMS, Circuit Judge:

Jose Rivera fell from scaffolding while in the employment of United Masonry, breaking his left arm. He received temporary total disability benefits covering the time of recovery during which he was completely incapacitated, temporary partial disability benefits covering the time of recovery during which he was partly incapacitated, and permanent partial disability benefits for the permanent impairment of his arm. See Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1988) (the "Act"), as extended by the District of Columbia Workmen's Compensation Act, 36 D.C.Code §§ 501 *et seq.* (1973) (repealed 1980).

Rivera also claimed that the injury encompassed his left shoulder, and that the combined effect of the arm and shoulder injuries was to prevent him from working,

entitling him to permanent total disability benefits. To prevail, he had the burden of proving that his injury prevented him from returning to his prior employment. If he satisfied this burden, United Masonry could avoid liability by providing proof of suitable alternate employment. See *Director, OWCP v. Berkstresser,* 921 F.2d 306, 311–12 (D.C.Cir.1990); *McBride v. Eastman Kodak Co.,* 844 F.2d 797, 798 (D.C.Cir. 1988); *Crum v. General Adjustment Bureau,* 738 F.2d 474, 479 (D.C.Cir.1984). The administrative law judge rejected Rivera's claim, disbelieving his evidence that his shoulder was injured and holding in the alternative that the employer proved that suitable alternate employment was available. The Benefits Review Board affirmed on both grounds. *Rivera v. United Masonry, Inc.,* BRB No. 88–1806 (BRB Oct. 30, 1990).

We do not address the question of whether Rivera proved that the shoulder injury disabled him from employment by United Masonry, because United Masonry plainly showed the availability of suitable alternate employment. The employer's market study revealed the existence of several employers in the area who said that they would hire someone of the age, education, work experience, and physical disability of Rivera.

Rivera argues that the market study was inadequate because employers were not asked if they would hire someone who, like Rivera, is an undocumented alien. Thus, if it were shown on remand that no one would hire such an alien, Rivera (on his view) would be unemployable and entitled to continuing total disability benefits—at least if United Masonry knew or had reason to know of Rivera's illegal status. Rivera relies heavily on *Cenvill Development Corp. v. Candelo,* 478 So.2d 1168 (Fla.App. 1 Dist.1985), which held under Florida's workers' compensation statute that an employer, who knew or had reason to know that an employee was an undocumented

alien when it hired him, could not point to the employee's alien status to defeat his claim that his injury prevented him from finding a job.

The Act's definition of the word "disability"—"incapacity *because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment," 33 U.S.C. § 902(10) (emphasis added)—clearly requires a causal connection between the worker's physical injury and his or her inability to find suitable employment. But in construing the statutory requirement of "incapacity", courts have said that the BRB is to look beyond the worker's injury and inquire whether someone having *both* the injury and a similar background—the worker's age, education, and work experience, for example—would be unable to find work in the relevant geographical area. See *Crum,* 738 F.2d at 479; *Hairston v. Todd Shipyards Corp.,* 849 F.2d 1194 (9th Cir. 1988) (criminal record is relevant part of background); *Trans–State Dredging v. Benefits Review Board,* 731 F.2d 199, 201 (4th Cir.1984). It would hardly fulfill the statutory purpose to assume a fictional superman, capable of any task in the absence of injury. A high school drop-out whose employment prospects are ruined by an arm injury should not be denied benefits merely because an identically injured physics PhD could get a job.

The BRB declined to treat undocumented alien status as one of the elements of an employee's background that must be taken into account when determining whether the claimant is disabled because of his injury. It noted that "claimant's status as an undocumented worker will prevent him from obtaining *any* job legally." *Rivera* at 5. In the eyes of the law the injury cannot have caused any "incapacity ... to earn ... wages", as the employee had *no* such capacity before or after the injury. At most the injury has highlighted a pre-existing incapacity.[1]

---

1. We do not here address the case of an undocumented alien who has suffered such a severe injury that it would prevent employment even for a citizen of similar age, education, etc.

There the injury would be a sufficient though not a necessary cause of unemployment; compare W. Prosser, The Law of Torts § 41 at 239 (1971) (citing cases finding causal link where

Of course, it is a legal fiction that an undocumented alien cannot get any jobs; between applicant willingness to conceal, and employer inability or unwillingness to detect undocumented status, hirings occur. But there is good reason for maintaining the legal fiction. If the BRB pierced the fiction, it would presumably have to allow employers to rebut the claim of permanent total disability by proving the availability of jobs actually open to undocumented aliens. But this would be extremely burdensome to the employer. As no one freely admits hiring undocumented aliens, the employer would have to employ testers or other ruses to make its showing.

Since proof would be so difficult, many partially injured undocumented aliens who can work would receive total disability benefits—benefits that would not be available to injured, legal workers in the same position but for the legality of their status in the United States. *Id.* Moreover, employers who proved the availability of "suitable" illegal jobs would, by showing their availability, facilitate further violation of the immigration laws. We doubt that Congress could have intended such results when it restricted alien employment. See Immigration Reform and Control Act of 1986, § 101 (codified at 8 U.S.C.A. § 1324a (West Supp.1991)); 18 U.S.C.A. § 1546 (West Supp.1989). If the Act's definition of "disability" does not altogether preclude the claimant's reading, it is at least ambiguous, and the BRB's reading of it is clearly reasonable. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We affirm.

So Ordered.

HARRY T. EDWARDS, Circuit Judge, concurring:

I concur in the judgment denying the petition for review, but for reasons other than those offered in the majority opinion.

In explaining its refusal to consider Rivera's illegal alienage as a factor relevant to "disability," the Benefits Review Board did not suggest that Rivera had no capacity to work prior to the injury. (After all, he did have the capacity to work at United Masonry.) Nor was it stated that illegal aliens are in fact employable. Rather, the rationale of the Board's admittedly murky opinion seems to be this: "Claimant's illegal status should not enable him to obtain a benefit unavailable to legal, injured workers, who are of the same age with the same educational and vocational backgrounds, and who have similar work restrictions." *Rivera v. United Masonry, Inc.*, Benefits Review Board No. 88–1806, at 5 (Oct. 30, 1990). Whatever the merits of this rationale, it constitutes a reasonable interpretation of an ambiguous statute and therefore demands our deference.

tortious conduct and another factor were each    sufficient causes of injury); here it is neither.