976 So.2d 612 (2008)
AMS STAFF LEASING, INC./Andrews Roofing, LLC/Aspen Administrators/Providence Property & Casualty Insurance Company, Appellants,
v.
Jesus Infante ARREOLA, Appellee.
Nos. 1D06-5727, 1D07-1202.
District Court of Appeal of Florida, First District.
January 31, 2008.
Rehearing Denied March 18, 2008.
Richard S. Powers, of William E. Gregory & Associates, P.A., Miami, for Appellants.
Glen D. Wieland, Orlando; Bill McCabe, Longwood, for Appellee.
PER CURIAM.
In this workers' compensation appeal, the appellants challenge two orders of the JCC; one awarded the claimant TPD benefits, and the other directed the E/C to authorize claimant's continuing medical care with an orthopedic physician in Mexico. We affirm the orders, but comment only on the order directing the E/C to *613 authorize treatment with an orthopedic surgeon in Mexico.

I. Background
The claimant is a 34 year old undocumented alien who had illegally entered the United States from Mexico. In January of 2005, while working in Florida, the claimant was involved in a compensable accident which is the subject of these appeals. On that date, claimant was unloading trash from the back of a truck when a vehicle came from behind and hit him in the right leg. The claimant had a long, protracted hospitalization. The claimant also had twelve surgeries in Florida in order to heal the severe fracture.
Eventually, in August of 2005, claimant came under the care of Dr. Donald Mauldin, an authorized orthopedist in Dallas, Texas. Dr. Mauldin recommended that the claimant have additional surgery. However, the claimant never received the recommended surgery, as he had returned to Mexico to live with his family in November of 2005.[1]
On February 1, 2006, counsel for claimant sent a letter to counsel for the E/C requesting authorization of one of three orthopedic doctors in claimant's hometown in Mexico. Counsel for claimant also provided claimant's address in Mexico. The E/C has not offered claimant any medical care in Mexico and refused to authorize any physician in Mexico to treat the claimant.
On March 30, 2006, the claimant went to a hospital in his home town of Jalisco, Mexico and was assigned to Dr. Ruben Granados-Romero ("Dr. Granados"), an orthopedic surgeon. Dr. Granados's diagnosis was similar to Dr. Mauldin's, and he opined that the chances of claimant returning to work were poor.
On March 21, 2006, the claimant filed a Petition for Benefits for injuries sustained in the compensable accident, seeking the following benefits: (1) authorization for continued medical care with an orthopedic surgeon in Mexico and (2) costs and attorney's fees. The E/C defended on a number of grounds, including that there were no known orthopedic doctors in Mexico who qualified as a "physician," as that term is used in the workers' compensation statutes.
After a hearing on the matter, the JCC entered an order directing the E/C to provide written authorization to Dr. Granados to provide the claimant with ongoing care that is reasonable, and medically necessary and related to the industrial accident. The JCC also ordered the E/C to pay for such care.
On August 21, 2006, the claimant filed another Petition for Benefits as a result of injuries sustained in the compensable accident. In the August Petition, the claimant sought Temporary Partial Disability Benefits. A hearing was held on the August Petition, after which the JCC awarded the claimant the requested benefits. The appeals of the orders below have been consolidated on this appeal for purposes of briefing and disposition.

II. Analysis
The appellants claim that the definition of "physician" under Chapter 458 does not include doctors living outside the United States who do not meet the same national requirements and qualifications to practice in the USA. According to section 440.13(2)(a), Florida Statutes (2005), an employer must provide medical care "only *614 when such care is given based on a referral by a physician as defined in this chapter." (Emphasis added). "Physician" is defined in section 440.13(1)(q), as follows:
[A] physician licensed under chapter 458, an osteopathic physician licensed under chapter 459, a chiropractic physician licensed under chapter 460, a podiatric physician licensed under chapter 461, an optometrist licensed under chapter 463, or a dentist licensed under chapter 466, each of whom must be certified by the agency as a health care provider.
§ 440.13(1)(q), Fla. Stat. (2005). The appellants contend that Dr. Granados is not a physician because he is not licensed under chapter 458, or under the laws of any other state in the United States.
Whether the Florida workers' compensation statutes contemplate treatment by a physician not licensed in any state in the United States appears to be an issue of first impression.[2] We begin by noting that Florida's workers' compensation law contemplates coverage for those who are not citizens. In Cenvill Dev. Corp. v. Candelo, 478 So.2d 1168 (Fla. 1st DCA 1985), this court held that illegal aliens are entitled to Florida workers' compensation coverage.[3]See also Safeharbor Employer Servs., Inc. v. Velazquez, 860 So.2d 984 (Fla. 1st DCA 2003); Gene's Harvesting v. Rodriguez, 421 So.2d 701 (Fla. 1st DCA 1982); § 440.02(15)(a), Fla. Stat. (2005) (defining employee as "any person who receives remuneration from an employer . . . whether lawfully or unlawfully employed, and includes, but is not limited to, aliens and minors"). To construe section 440.13(2)(a) in a manner that would limit authorized treatment for a claimant injured in the State of Florida to a physician licensed in the State of Florida, or anywhere else in the United States, would preclude workers injured in this state (including illegal aliens) who return to their home country from receiving authorized remedial care for clearly compensable injuries. See § 440.13(2)(a), Fla. Stat. (2005) (noting that an employer "shall furnish to the employee such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require").
*615 Additionally, according to Florida Administrative Rule 59A-29.002(3)(d), the requirement for certification does not apply to health care providers of medical services outside the State of Florida. That rule provides that health care providers rendering services outside the state of Florida are not required to be certified in order to provide services pursuant to section 440.13, Florida Statutes. Thus, the rule specifically contemplates that physicians not licensed under Florida law may render services pursuant to chapter 440.[4]
Finally, Florida law indicates that an injured worker is not prohibited from moving from his pre-injury Florida residence and receiving treatment outside Florida. In Department of Transportation v. Montero, 568 So.2d 65 (Fla. 1st DCA 1990), a claimant suffered from physical and psychiatric injuries due to an accident on the job. At some point, the claimant expressed a desire to return to his family home in Costa Rica. Id. at 66. The treating psychiatrist suggested that such a move might help the claimant's chances of recovery. Id. After moving to Costa Rica, a JCC found that the claimant had attained MMI as to his physical condition, but not his psychiatric condition. Id. Eventually, the claimant obtained work in Costa Rica with a family friend, but his wages were less than his pre-injury earnings. Id. As a result, he sought temporary partial wage loss benefits. Id. At the hearing, the E/C attempted to introduce evidence as to the prevailing rate of pay, standard of living, and social services available in the United States and Costa Rica. Id. The Montero court held that the trial court properly declined to allow the evidence. The Court stated, "[a]n injured worker is not confined to living in the pre-injury location, and absent an improper motivation a departure therefrom does not preclude compensation benefits." Id. The court reversed the JCC's denial of benefits (on the basis that the claimant voluntarily moved) because the claimant's move to Costa Rica was not shown to have involved any improper motivation. Id.; see also Lykes Bros., Inc. v. Jackson, 461 So.2d 247 (Fla. 1st DCA 1984) (finding that claimant's move from Florida to North Carolina not motivated by desire to avoid work, and does not show voluntary limitation of income precluding award of wage loss benefits, where claimant's fiancé had experienced life-threatening accident in North Carolina). In this case, the JCC properly found that the claimant's motive, to be with his family, was not improper. Cf. Hurley v. Stuart Fine Foods, 687 So.2d 310, 311 n. 3 (Fla. 1st DCA 1997) (suggesting move for financial reasons is not an improper motivation where there was no evidence that claimant's move was motivated by desire to avoid work); Stewart v. CRS Rinker Materials Corp., 855 So.2d 1173 (Fla. 1st DCA 2003) (noting that relocation to Pensacola due to marital problems and desire to be with family was not "improper motivation" which would preclude award of TPD benefits).
The appellants rely on case law holding that "[o]ut-of-state remedial treatment may be compensable where local treatment or evaluation would be unavailable or less beneficial to claimant and where equal treatment is unavailable in Florida." See Decker v. City of West Palm Beach, 379 So.2d 1004 (Fla. 1st DCA 1980); see also United Records & Tapes v. Deall, 378 So.2d 99 (Fla. 1st DCA 1979); Layne-Western Co. v. Cox, 497 So.2d 955 (Fla. 1st DCA 1986). However, those cases are distinguishable. *616 Decker is distinguishable because that case dealt with an E/C's responsibility to pay relocation expenses, which is not at issue in this case. Deall and Cox are distinguishable because those cases dealt with situations where the claimants were living in Florida but seeking out-of-state treatment or evaluation. In this case, the claimant was no longer living in Florida; he had already moved to Mexico and was residing there at the time he requested the necessary medical treatment. This distinction is important in light of the case law holding that a claimant is not confined to living in his pre-injury Florida residence.

III. Conclusion
For the reasons discussed above, we conclude that a foreign physician may render compensable services to workers' compensation claimants injured in Florida. Thus, the trial court did not err in directing the E/C to authorize continued treatment for claimant by a Mexican physician.
AFFIRMED.
WEBSTER, PADOVANO, and POLSTON, JJ., concur.
NOTES
[1] The claimant does not have the necessary legal documents to return to the United States.
[2] A case dealing with a similar issue is State Compensation Insurance Fund v. Workers' Compensation Appeals Board, 69 Cal.App.3d 884, 138 Cal.Rptr. 509 (1977). In that case, a workers' compensation applicant had been injured while working in California and had subsequently moved back to Mexico, where he sought treatment with a Mexican physician. Id. at 886, 138 Cal.Rptr. 509. The Workers Compensation Appeals Board ordered the State Compensation Insurance Fund to reimburse the applicant for the treatment he received from the Mexican doctor. Id. The Fund argued that the Mexican physician was not a "physician" as defined in California law because he was not licensed to practice in California. Id. at 887, 138 Cal. Rptr. 509. The court held that, under California law, the definition of physician did not exclude a physician licensed to practice in another country. Id. at 893, 138 Cal.Rptr. 509. Thus, the court affirmed the order of the Board awarding reimbursement for the cost of the self-procured medical treatment the applicant received from the Mexican physician.
[3] We do not comment on whether an unauthorized worker could be precluded from receiving benefits under the "fraud defense." See generally James F. Kidd & Rick Blystone, Not So Fast! A Closer Look at § 440.105(4)(B)(9) Reveals Unauthorized Workers Should be Precluded From Workers' Compensation Benefits, Under These Circumstances, 81 Fla. B.J. 65 (Oct. 2007) (asserting that an undocumented worker commits fraud for which he or she could be denied workers' compensation benefits by providing false evidence of identity to his or her employer in an effort to obtain employment, or by providing false statements as evidence of identity to a health care provider subsequent to his or her industrial accident).
[4] In Florida, an out-of-state physician may also render services as an independent medical examiner. See Griffin v. J.B. Hunt Transp., 795 So.2d 155 (Fla. 1st DCA 2001) (holding that physician licensed in Georgia, rather than Florida, could perform IME).