PER CURIAM.
In this workers’ compensation case, the Judge of Compensation Claims (JCC) found that the Employer knew or should have known that Claimant (its employee), an illegal immigrant from Mexico, was without the legal right to work in the United States. The JCC further found that notwithstanding this knowledge, the Employer hired and continued to unlawfully employ Claimant, until he was injured in a significant workplace accident. After Claimant suffered injury, the Employer and its workers’ compensation carrier (collectively the E/C) attempted to assert, as a defensive matter, Claimant’s illegal status so as to defeat a claim for permanent total disability (PTD) benefits. The JCC concluded, based on the authority of Cenvill Development Corp. v. Candelo, 478 So.2d 1168 (Fla. 1st DCA 1985), that, because the Employer knew or should have known of Claimant’s illegal status prior to his injury, but continued his employment nonetheless, the E/C was precluded from using Claimant’s illegal status as a defensive measure — requiring the E/C to respond to the disability imposed by Claimant’s significant and objectively demonstrated work-related injuries and physical restrictions, and his vocational limitations which include, but are not limited to, his unauthorized work status.
On appeal, the E/C argues that Claimant’s illegal status should defeat Claimant’s entitlement to permanent total disability (PTD) benefits. Because we conclude that the JCC properly applied this court’s precedent in Cándelo and, further, because competent substantial evidence supports the JCC’s finding that Claimant is permanently and totally disabled based on the combined effect of his physical injuries and restrictions and his vocational impediments, we affirm the award of permanent total disability (PTD) benefits.
By way of cross-appeal, Claimant challenges the JCC’s conclusion that he was legally prohibited from awarding PTD benefits on a continuing basis and for periods following the merit hearing. Because a JCC may award continuing PTD benefits, we reverse the JCC’s denial of PTD benefits for periods following the date of merit hearing, and remand for additional proceedings.
Facts
Claimant, while working for the Employer as a framer, fell from a height of thirty feet, suffering multiple complex fractures to his left foot and forearm. After receiving extensive medical treatment, including the implantation of a spinal cord stimulator, Claimant was determined to have permanent injuries, including an objective diagnosis of complex regional pain syndrome in the left foot accompanied by constant pain, nerve injury, and discoloration. As a result of these injuries, Claimant has been permanently restricted to sedentary work only, a strength level that *333 prohibits Claimant from performing any of his pre-injury occupations (farm, construction, and manufacturing work). Claimant, in addition to not possessing proper documentation that would allow him to work legally in the United States, has no driver’s license, a limited education, an inability to speak, read, or write in English, and no transferable skills which would assist him in obtaining lighter employment.
Claimant filed a claim for PTD benefits, which the E/C denied on the basis that Claimant was physically capable of sedentary work, and was unemployable only because of his illegal status. Claimant, relying on the authority of Cándelo, sought to prove that, because the Employer knew or should have known his illegal status at all relevant times, it was precluded from asserting this fact as a shield from liability. The JCC, sufficiently convinced by the evidence demonstrating as much, found that the Employer knew or should have known Claimant’s illegal status and unlawfully employed him nonetheless. Based on expert vocational testimony introduced by the E/C, the JCC found that Claimant’s physical injuries, when combined with Claimant’s vocational impediments (including his illegal status — which, the JCC concluded on the authority and rationale of Cándelo, could not be discounted) rendered him permanently and totally disabled, and unable to engage in even sedentary employment within a fifty-mile radius of his residence. Based on these findings and conclusions, the JCC awarded PTD benefits, but only through the date of merit hearing, because the JCC concluded that he was legally prohibited from awarding PTD benefits on a “continuing basis.” This appeal and cross appeal follow.

Cándelo

Although there is no shortage of debate that can be had on the issue of illegal labor and its effect on our state, there is no dispute that the Florida Legislature has expressed an unyielding, textual intent that aliens, including those who are illegal and unlawfully employed, be covered and compensated under the Florida Workers’ Compensation Law. See § 440.02(15)(a), Fla. Stat. (2007) (defining “employee” to include any person who receives remuneration from an employer, including aliens, whether “lawfully or unlawfully employed”); see also Safeharbor Employer Servs., Inc. v. Velazquez, 860 So.2d 984 (Fla. 1st DCA 2003) (“Therefore, we conclude that the Florida legislature’s right to enact workers’ compensation benefits for illegal aliens is not preempted by federal action.”). Indeed, the purpose of workers’ compensation law is to place on industry, rather than the general taxpaying public, the expense incident to the hazards created by industry. Gore v. Lee County Sch. Bd., 43 So.3d 846, 849 (Fla. 1st DCA 2010) (explaining workers’ compensation legislation is designed to relieve society in general of expenses created by industry). Moreover, because the employer stands to benefit and profit from its employment of labor, and further is in the best position to avoid the risk of loss, the courts have uniformly recognized the impropriety of foisting on society the costs of a “broken body” and “diminished income” created by industry. Mobile Elevator Co. v. White, 39 So.2d 799, 800 (Fla.1949).
Accordingly, the Florida Legislature has long recognized that although the employment of illegal aliens is prohibited by federal and state law, violation of these laws is an unfortunate reality, and the cost of injuries sustained by unlawful workers, being no less real than those suffered by lawful workers, should be borne by the industry giving rise to the risk (and best positioned to avoid the loss), not the general taxpaying public. In the instance of *334 employers that employ illegal workers, this court has held that such an employer is precluded from asserting the status of an illegal alien as a defensive matter so as to avoid liability for disability benefits otherwise due only when the employer “knew or should have known of the true status of the employee.” Candelo, 478 So.2d at 1170 (“This holding prevents unauthorized aliens from suffering at the hands of an employer who would knowingly hire the alien and then conveniently use the unauthorized alien status to avoid paying wage loss benefits.”). The holding in Cándelo, in addition to being binding authority on this court, advances the principle that an entity that knowingly employs unlawful labor should not be able to shirk the cost of the injuries it creates — and in turn, shift the cost of the damages that it has knowingly created on the taxpaying public— ultimately placing it in a unfairly superior financial position to those employers who operate lawfully. Accordingly, here, we find no error in the JCC’s application of Cándelo so as to preclude the E/C from raising Claimant’s illegal status, a concern that it waived when hiring and continuing to employ Claimant, as a defensive mechanism to avoid responsibility for an individual who is, based on the factual findings of the JCC, permanently and totally disabled under the Workers’ Compensation Law.
PTD Determination
To obtain PTD benefits under the Florida Workers’ Compensation Law, a claimant must demonstrate he is not able to engage in at least sedentary employment within a fifty-mile radius of his residence due to his physical limitations. See § 440.15(l)(b)5., Fla. Stat. (2007). This court has stated that the legal question presented under section 440.15(l)(b)5. is not merely whether the employee is physically capable of performing at least sedentary employment, but whether the employee (the individual seeking benefits, not a hypothetical individual) can reasonably secure or obtain — “engage in” — at least sedentary employment within a fifty-mile radius of his residence, considering his physical and vocational limitations. See Garcia v. Fence Masters, Inc., 16 So.3d 200, 202 (Fla. 1st DCA 2009) (reversing denial of PTD benefits where JCC made conclusory finding that claimant was physically capable of performing at least sedentary employment, but failed to make finding that claimant could reasonably obtain employment within fifty-mile radius of his residence in consideration of his particular vocational impairments).
Here, the evidence established that Claimant was physically disabled from performing any of the strenuous jobs he held before his injury, and was likewise physically precluded from most occupations or trades, making his employment opportunities severely limited — even without consideration of the vocational impediments, which include (in addition to an illegal status) a limited education, an inability to read, write, or speak English, no driver’s license, and no transferrable skills. Based on the expert vocational testimony introduced by the E/C, the JCC found that Claimant’s injury, combined with his vocational impediments, rendered him permanently and totally disabled (incapable of securing and engaging in even sedentary employment), satisfying one of the three disjunctive tests for establishing permanent total disability recognized by this court. See Blake v. Merck & Co., 43 So.3d 882, 883 (Fla. 1st DCA 2010) (explaining evidentiary methods of proving PTD where employee has non-presumptive injury).
Here, the E/C, although recognizing the authority of Cándelo, argues that its holding (perhaps altered by a new *335 polemic, the passage of time, or the expense of the benefit here at issue) should not be upheld or applied under these circumstances, as doing so would reward Claimant. To be certain, workers’ compensation is not designed as a reward of any sort; rather, it is a limited form of compensation for actual physical injury, both medically demonstrated and verified. See § 440.09(1), Fla. Stat. (2007) (providing compensation only payable for injury that is objectively demonstrable within a reasonable degree of medical certainty). The purpose of workers’ compensation is to provide statutorily-limited sustenance and medical benefits to only those who are legitimately injured and disabled through workplace accidents — so that these expenses are not visited on society at large. See, e.g., Fla. Game & Fresh Water Fish Comm’n v. Driggers, 65 So.2d 723, 725 (Fla.1953) (observing that Florida’s Workers’ Compensation Law was enacted partially “to place on the industry served and not on society the burden of providing for injured or killed workmen and their families.”). Moreover, to the extent that any argument can be made that a system that allows individuals to collect benefits derivative of illegal employment is undesirable policy because it “rewards” the illegal worker and punishes the employer, this is a decision within the province of the Legislature. See Velazquez, 860 So.2d at 985-86 (explaining the right to enact compensation laws allowing illegal aliens to recover is matter for state legislature, and Florida “clearly” allows benefits for illegal aliens). And, the Florida Legislature has made pellucidly clear its intent that illegal immigrants be covered under the Florida Workers’ Compensation Law. See § 440.02(15)(a); see also Velazquez, 860 So.2d at 985-86. Undoubtedly, part of the rationale for placing the onus of compensation, even though limited, on the specific industry that causes the loss is to provide a financial incentive for that entity best positioned to do so, to avoid the loss altogether. See generally Candelo, 478 So.2d at 1170. Here, the Employer could have avoided the entirety of the loss — which it now seeks to shift onto society at large— by refraining from knowingly hiring illegal labor. Because Claimant sustained disabling physical injuries that, when combined with his vocational impediments, render him incapable of engaging in even sedentary employment, we affirm the award of PTD benefits.
A JCC may Award Continuing PTD Benefits
Finally, the JCC found Claimant entitled to PTD benefits from the date of overall maximum medical improvement through the date of the final hearing, but for no period thereafter. The JCC cited Temples v. WDW Hospitality & Recreation Corp., 993 So.2d 63 (Fla. 1st DCA 2008), and Myers v. Hillsborough School Board, 982 So.2d 735 (Fla. 1st DCA 2008), as authority for his refusal to award benefits beyond the date of merit hearing. Although these cases support the proposition that a claimant, under specified circumstances, may permissibly bring sequential claims for PTD benefits without being barred by res judicata, nothing in Temples or Myers precludes a JCC from awarding PTD benefits on a continuing basis where there is an evidentiary foundation for disability, permanent in duration.
Indeed, section 440.192(3), Florida Statutes (2007), contemplates such an award: “A petition for benefits may contain a claim for past benefits and continuing benefits in any benefits category, but is limited to those in default and ripe, due, and owing on the date the petition is filed.”
Accordingly, we AFFIRM the award of PTD benefits, REVERSE the JCC’s denial of PTD benefits for periods following *336 the merit hearing, and REMAND for entry of an order awarding PTD benefits on a continuing basis.
VAN NORTWICK, PADOVANO, and HAWKES, JJ., concur.