*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-92

JUANA MIRANDA, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DEVON & BLAKELY/2200 WSH FOOD CORP. and AMGUARD INS. CO., INTERVENORS.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-105-19)

(Argued April 27, 2021       Decided August 19, 2021)

 *Benjamin E. Douglas* for petitioner.

 *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, filed a statement in lieu of a brief for respondent.

 *Todd S. Sapiro* for intervenors.

 Before GLICKMAN, MCLEESE, and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*: Petitioner Juana Miranda challenges a decision of the Compensation Review Board (CRB) denying her claim for temporary total disability benefits. We vacate and remand.

## I.

Except as indicated, the following facts appear to be undisputed for purposes of this petition for review. Ms. Miranda injured her knee while working for intervenor Devon & Blakely/2200 WSH Food Corp. *Miranda*, AHD No. 19-248, 2019 WL 4911007, at *1 (D.C. Dep't. of Emp. Servs. Sept. 24, 2019). After two surgeries to treat her injury, she was medically cleared to work with restrictions. *Id.* Devon & Blakely did not offer her a modified position, and Ms. Miranda met with a vocational-rehabilitation counselor in an effort to obtain other employment. *Id.* at *2, 4. When Ms. Miranda did not provide documentation showing eligibility to work in the United States, vocational-rehabilitation assistance ceased, and Devon & Blakely and its insurer stopped voluntarily paying temporary total disability benefits to Ms. Miranda in March 2019. *Id.* at *2.

Ms. Miranda made efforts on her own to obtain employment, and eventually she succeeded in obtaining a new position. *Miranda*, 2019 WL 4911007, at *2. Ms.

Miranda's condition worsened, however, and she required further surgery, after which she was again physically unable to work. In June 2019, voluntary temporary total disability benefits therefore resumed. *Id.* at *1.

Ms. Miranda sought an award of temporary total disability payments for the period from March 2019 to June 2019. *Miranda*, 2019 WL 4911007, at *1-2. After an evidentiary hearing, an Administrative Law Judge (ALJ) denied Ms. Miranda's claim. *Id.* at *1-10.

At the hearing, Ms. Miranda invoked the Fifth Amendment when asked about her immigration status. Devon & Blakely introduced a labor-market survey that Devon & Blakely contended showed six available jobs that Ms. Miranda was physically capable of performing. *Miranda*, 2019 WL 4911007, at *1.

After the hearing, the ALJ inferred that Ms. Miranda was not authorized to work in the United States. *Miranda*, 2019 WL 4911007, at *2-3. We do not understand Ms. Miranda to dispute that inference for purposes of this petition for review. The ALJ further found that Ms. Miranda testified credibly, was willing to work, and had found subsequent employment on her own. *Id*. at *2. The ALJ determined that Devon & Blakely had not offered Ms. Miranda a modified position

and that only two of the six positions identified in the labor-market survey were compatible with Ms. Miranda's work restrictions. *Id*. at *1, 3.

The ALJ acknowledged that Ms. Miranda's lack of authorization to work in the United States did not categorically render Ms. Miranda ineligible for workers' compensation benefits under the District of Columbia Workers' Compensation Act, D.C. Code § 32-1501 et seq. (2019 Repl.). *Miranda*, 2019 WL 4911007, at *5; *see also Asylum Co. v. District of Columbia Dep't of Emp. Servs.*, 10 A.3d 619, 625-28 (D.C. 2010) (upholding CRB's conclusion that undocumented workers can be eligible to receive workers' compensation benefits). The ALJ analyzed Ms. Miranda's claim for temporary total disability benefits under a three-part test derived from *Logan v. District of Columbia Dep't of Emp. Servs.*, 805 A.2d 237 (D.C. 2002). *Miranda*, 2019 WL 4911007, at *3-4. As the ALJ described that test, Ms. Miranda bore the burden of showing that her injury prevented her from performing her pre-injury job; then the burden would shift to Devon & Blakely to show that it had offered Ms. Miranda either her pre-injury job or a suitable modified position; then the burden would shift to Ms. Miranda to rebut Devon & Blakely's evidence. *Id*. at *3.

The ALJ noted that the parties did not dispute that Ms. Miranda could not physically perform her pre-injury job during the time period at issue. *Miranda*, 2019 WL 4911007, at *4. The ALJ acknowledged that, under "usual circumstances," Ms. Miranda therefore would have carried her burden at the first step of the *Logan* test. *Id.* The ALJ concluded, however, that Ms. Miranda had an "additional burden to prove she [wa]s entitled to work in the United States." *Id.* The ALJ concluded that Ms. Miranda could not meet her initial burden, because her immigration status, not her injury, prevented her from returning to any employment. *Id.* at *4-7. The ALJ also concluded that an employer who offered to employ an undocumented worker or who provided vocational-rehabilitation services to an undocumented worker would be violating federal immigration laws or facilitating such violations. *Id.* at *5.

Ms. Miranda appealed to the CRB, which affirmed the ALJ's order but relied on an alternative rationale. *Miranda*, CRB No. 19-105, 2020 WL 743001, at *1-5 (Comp. Rev. Bd. Jan. 9, 2020). The CRB also acknowledged that Ms. Miranda's undocumented status did not make her categorically ineligible for workers' compensation benefits. *Id.* at *2-3. The CRB treated the issue before it as governed by the *Logan* test, which the CRB described as follows:

to determine the extent of disability a claimant first must establish a prima facie showing of total disability by proving the work injury prevents a claimant from returning to her pre-injury job. If that is established, then the burden shifts to an employer to rebut this showing by proving a claimant could return to her pre-injury work or showing that it offered a claimant a position consistent with her limitations. If employer rebuts a claimant's prima facie case with this showing, the burden then shifts back to the claimant to show the employer's evidence is faulty or inadequate.

*Miranda*, 2020 WL 743001, at *3.

The CRB noted, however, that immigration status is "not irrelevant at all times and in all cases." *Id.* at *4 (internal quotation marks omitted). The CRB then appeared to endorse the approach it had adopted in an earlier decision, *Augustin*, CRB No. 13-145, 2014 WL 1513449 (Comp. Rev. Bd. Mar. 7, 2014). *Id.* Under that approach, an undocumented "worker's continued wage loss is not, by itself, sufficient to support an award of ongoing disability compensation if, had the worker been documented, the worker could have returned to gainful employment." *Id.* (quoting *Augustin*, 2014 WL 1513449, at *5).

The CRB in this case also relied on another of its earlier decisions, *Gonzales*, CRB No. 08-077, 2008 WL 4335654, at *10 (Comp. Rev. Bd. Aug. 22, 2008), *aff'd*,

*Asylum Co.*, 10 A.3d at 619. *Miranda*, 2020 WL 743001, at \*5. As the CRB in this case explained, the CRB's decision in *Gonzales* stated that (1) federal law precluded employers from continuing to employ undocumented workers and (2) it could be a violation of federal law for employers to provide certain kinds of vocational-rehabilitation assistance to undocumented workers. *Id.* (citing *Gonzales*, 2008 WL 4335654, at \*10).

Turning to the circumstances of the present case, the CRB stated that Devon & Blakely had "met its burden by identifying two jobs compatible with [Ms. Miranda's] restrictions however due to her undocumented status they are prohibited from re-employing her. Thus, [Ms. Miranda] fails to meet the *Logan* third step for reasons unrelated to her ability to physically do the work." *Miranda*, 2020 WL 743001, at \*5.

## II.

We may reverse a CRB decision "only if we conclude that the decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Placido v. District of Columbia Dep't of Emp. Servs.*, 92 A.3d 323, 326 (D.C. 2014) (internal quotation marks omitted). "Although this court generally

resolves legal questions de novo, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is unreasonable or is inconsistent with the statutory language or purpose." *Id.* (citation and internal quotation marks omitted). The court ordinarily will not affirm an agency action that is inadequately explained. *E.g.*, *D.C. Appleseed Ctr. for L. & Just. v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1216-17 (D.C. 2012) ("[W]ithout sufficient findings and explanation from the agency, we are unable to affirm that the agency's determination flowed rationally from the factual findings, and that the agency in fact applied the law taking into account the entirety of the record.") (bracket, ellipses, and internal quotation marks omitted). We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 1217 (internal quotation marks omitted).

We are unable to discern the CRB's path in this case. We note some inconsistency about the proper formulation of *Logan*'s three-part test. As the ALJ and CRB in this case described the test, the focus at the second step is on whether the claimant's employer offered either to restore the claimant to the prior job or to provide a suitable replacement position with the employer. *Miranda*, 2019 WL 4911007, at *4; *Miranda*, 2020 WL 743001, at *3. In *Logan*, however, this court

described the second step of the test more broadly, as whether the employer had provided "sufficient evidence of suitable job availability to overcome a finding of total disability." 805 A.2d at 243. This court described the third step in correspondingly broad terms, as whether the claimant had "refute[d] the employer's presentation . . . either by challenging the legitimacy of the employer's evidence of available employment or by demonstrating diligence, but a lack of success, in obtaining other employment." *Id.*; *see also Rocha-Guzmán v. District of Columbia Dep't of Emp. Servs.*, 170 A.3d 170, 174 (D.C. 2014) (using same formulation of second and third steps of *Logan* test).

The inconsistent formulations of the *Logan* test appear relevant to the CRB's decision in this case. The CRB's analysis of Ms. Miranda's particular situation was extremely brief, consisting entirely of the following sentences:

> [Devon & Blakely] met its burden by identifying two jobs compatible with [Ms. Miranda's] restrictions however due to her undocumented status they are prohibited from re-employing her. Thus, [Ms. Miranda] fails to meet the *Logan* third step for reasons unrelated to her ability to physically do the work. [Ms. Miranda's] wage loss is unrelated to her work injury and accordingly, she is ineligible for benefits . . . .

*Miranda*, 2020 WL 743001, at \*5.  Although the pronoun "they" adds some uncertainty, the CRB's focus here seems to be solely on whether Devon & Blakely could re-employ Ms. Miranda.  As noted, however, our cases indicate that the *Logan* test generally calls for a broader inquiry into (1) whether other positions that the claimant could physically perform existed in the labor market; and (2) and, if so, whether the claimant could show that, despite diligently seeking such a position, the claimant had been unable to obtain one during the time period at issue.  Other CRB decisions appear to reflect an awareness of the broader scope of the *Logan* test, including in the context of undocumented workers.  *See, e.g.*, *Lopez*, CRB No. 16-012, 2016 WL 3870158, at \*4-5 (Comp. Rev. Bd. June 23, 2016) (under *Logan* test, if employer can show that alternative jobs from other employers were available, undocumented worker can rebut employer's showing through evidence of diligent but unsuccessful job search).

The CRB's prior decisions do clearly indicate the view that temporary total disability benefits are not available if (1) the injured claimant was undocumented; (2) the injured claimant recovered to the point of being physically able to do some work; (3) positions within the claimant's abilities were available in the labor market; (4) a documented worker would have been able to obtain such a position; and (5) the reason the claimant was unable to do so was because employers were unwilling to

hire an undocumented worker. *See, e.g.*, *Gonzales*, 2008 WL 4335654, at *8-9 (following *Rivera v. United Masonry, Inc.*, 948 F.2d 774, 775-76 (D.C. Cir. 1991) (applying Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1988))). As *Gonzales* and *Rivera* both explain, a contrary approach would make disability benefits available to undocumented workers in circumstances where otherwise similarly situated workers would not receive benefits. *Gonzales*, 2008 WL 4335654, at *8-9; *Rivera*, 948 F.2d at 776. We agree with *Rivera* that an agency's decision to decline to make disability benefits available in such circumstances is reasonable and thus entitled to deference. *Rivera*, 948 F.2d at 775-76.

It does not necessarily follow, however, that claimants in Ms. Miranda's general situation are categorically foreclosed from obtaining any disability benefits. To the contrary, the CRB's prior decision in *Lopez*, 2016 WL 3870158, at *4-5, appears to indicate that undocumented claimants in such circumstances would be entitled to temporary total disability benefits if they could show that they made a diligent search and were unable to obtain a job during the time period at issue for reasons other than their undocumented status. Similarly, the CRB explained in *Augustin* that the analysis applicable in cases such as Ms. Miranda's would involve

(1) establishing whether and when an injured worker has recovered physically sufficiently to be able to return to work in some gainful capacity, assuming a legal status, (2) establishing whether at that point the level of wages that would be expected to be earned if the worker were documented is above, at, or below the pre-injury wage, and (3) adjusting the ongoing wage loss benefits, if any, accordingly.

*Augustin*, 2014 WL 1513449, at *6.

In a footnote in *Gonzales* that the CRB did not discuss in Ms. Miranda's case, the CRB also stated that

[an undocumented worker's] ability to return to work at a rate of pay less than the pre-injury average weekly wage does not result in a conclusion the undocumented [person] obtains no ongoing wage loss benefits under the Act once there is a physical ability to perform work but at a lesser wage. If the physical limits on work capacity caused by the work injury continue to restrict the number and types of jobs available and for which the worker could otherwise compete to a smaller universe of lesser paying potential jobs, the work injury itself is still a "sufficient" cause of a partial wage loss regardless of a worker's overall lack of employability.

*Gonzales*, 2008 WL 4335654, at *9 n.6.

In summary, the CRB's prior decisions in this context indicate that a worker's undocumented status is not dispositive at any of *Logan*'s three steps. At the first step, the question is whether the claimant would be able to return to the claimant's usual employment, disregarding the claimant's undocumented status. *Augustin*, 2014 WL 1513449, at *6 ("assuming a legal status"). If so, then the burden is on the employer at the second step to show that there are other suitable jobs available "for which the [c]laimant could compete in light of claimant's age, education[,] work experience, and physical capacity," again assuming a legal status. *Lopez*, 2016 WL 3870158, at *4. The employer may make that showing by demonstrating that it would have offered the claimant a suitable position but for the claimant's undocumented status, or by otherwise showing "sufficient evidence of suitable job availability" in the labor market, *Logan*, 805 A.2d at 243, assuming legal status. If the employer makes that showing, then the burden shifts back to the claimant to show that the claimant made a diligent search and was unable to find a job for reasons other than the claimant's undocumented status, *Lopez*, 2016 WL 3870158, at *4-5, or by otherwise challenging the legitimacy of the employer's evidence at step two, *see generally Logan*, 805 A.2d at 243.

The CRB's decision here departed from that analysis at the second and third steps, and failed to correct the ALJ's own departure at the first step. At the first step,

the ALJ concluded that Ms. Miranda could not establish a prima facie showing of total disability without satisfying "the additional burden [of] prov[ing] she is entitled to work in the United States." We hold that the ALJ's approach cannot reasonably be reconciled with the rationale of our decision in *Asylum Co.*, 10 A.3d at 625-28, which held that undocumented workers are not flatly barred from receiving workers' compensation benefits. At the second step, the CRB noted that the employer satisfied its burden by identifying two jobs in the labor market that Ms. Miranda could have competed for, but it is unclear how that alone satisfies the second step. It certainly does not show that the employer would have re-employed Ms. Miranda but for her undocumented status, because the two positions identified were with other employers. Perhaps a showing of just two suitable positions in the broader labor market is sufficient evidence to satisfy an employer's burden under step two, but if that is the CRB's view the CRB did not make that clear in its order. Finally, the CRB treated Ms. Miranda's undocumented status as an absolute bar to her satisfying her burden under step three because the employer is "prohibited from re-employing her." *Miranda*, 2020 WL 743001, at *5. That appears to be contrary to the CRB's previously announced position that claimants might meet their burden under this third step by showing that they diligently looked for work from other employers and were unable to find it for reasons independent of their undocumented status, *Lopez*, 2016 WL 3870158, at *4-5.

If the CRB had some rationale for departing from the approach we glean from its prior decisions, it did not articulate that rationale. The CRB did not discuss its prior decision in *Lopez* or relevant portions of *Augustin* and *Gonzales*, which seem to be more faithful to our precedents in this area yet are in tension with the CRB's brief analysis here. Without conclusively resolving this tension, we remand for the CRB to explain the relationship among this case, *Lopez*, *Gonzales*, and *Augustin*. *Cf., e.g.*, *Hensley v. District of Columbia Dep't of Emp. Servs.*, 49 A.3d 1195, 1205 (D.C. 2012) ("[A]s a general rule, unexplained inconsistencies in agency policy require a remand to the agency to allow it to supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.") (ellipses, brackets, and internal quotation marks omitted).

More specifically, Ms. Miranda has argued in this case that she searched for jobs once she was cleared to work with restrictions, that she was not able to obtain a job during the time period at issue, and that she later did obtain a job. The CRB did not explicitly address that argument either legally or factually. We therefore vacate the order of the CRB and remand the case for further consideration by the CRB. We express no view either on issues decided by the ALJ but not addressed by the CRB or on other arguments made by the parties that might or might not arise on

remand. *Cf., e.g.*, *Hensley*, 49 A.3d at 1205 (acknowledging CRB's expertise in interpreting Workers' Compensation Act and remanding for CRB to address issue in first instance); *Jackson v. Condor Mgmt. Gp., Inc.*, 587 A.2d 222, 226 (D.C. 1991) (declining to consider issues that "may or may not arise upon remand").

For the foregoing reasons, we vacate the order of the CRB and remand for further proceedings.

*So ordered*.